Melissa L. **GIRARD**, Respondent,

v.

Harold E. **GIRARD**, Jr., Appellant.

No. WD 59238.

Missouri Court of Appeals,
Western District.

Submitted Aug. 22, 2001.

Decided Aug. 28, 2001.

Bruce B. Brown, Kearney, for Appellant.

Melissa L. Girard, pro se.

Before THOMAS H. NEWTON, P.J.,
HAROLD L. LOWENSTEIN, and
JAMES M. SMART, Jr., JJ.

JAMES M. SMART, Jr., Judge

This case involves an adult abuse petition for order of protection pursuant to § 455.020 RSMo. Following a hearing on October 23, 2000, the trial court entered judgment granting a full order of protection against Harold Girard. On appeal, Girard contends that the evidence was insufficient to warrant the court granting the order of protection.

### Factual Background

Melissa Girard and Harold Girard were formerly married. They were in the midst of a custody dispute at the time in question. On October 10, 2000, Melissa Girard filed an adult abuse petition for an order of protection against Harold on the basis of stalking. She alleged the stalking occurred at her home in Sedalia, Missouri. Melissa alleged two acts of stalking. She alleged that the first occurred on September 15, 2000, when she observed Harold parked in the street by the alley behind the house. She alleged that he was engaged in watching the children play in the yard at that time. The second allegation of stalking occurred on October 9, 2000, when Harold was seen driving slowly by the house while the children were out in the yard. Melissa claimed that she was afraid of Harold and that there was an immediate and present danger of abuse to her, or of stalking her, because "Harold had no reason to come to my or by my house. He only drives by it when it is my week with my daughter and he sits watching the children playing outside." She alleged that the children do not understand why he does this. She also men-

tioned that a custody dispute was pending in Saline County.

At the hearing, Melissa presented testimony. She testified that on September 15, 2000, at about 6:30 in the evening, she was outside pulling weeds and the children were playing in the back yard. She heard a "noisy car," and believing it to be a friend, she stood up from where she was pulling weeds to wave. As Melissa turned, she observed Harold, Harold's girlfriend, and Harold's ·son, sitting in a car on the street right next to the alley near her home. The second incident occurred later. Melissa testified that on October 9, 2000, the kids were playing outside. As she was looking outside for them, the kids came running in, saying "Daddy drove by." Melissa said she opened the door and observed the tail end of the car and the license plate.

On cross-examination, Melissa was unsure about whether the actual date of the second event was September 26 or October 9. Harold testified, denying that he was present on the dates in question. Harold also presented evidence showing that on October 9, he was at work during the time in question.

Following the evidence, the court entered a full order of protection for Melissa, ordering that: 1) Harold would not stalk, abuse, threaten to abuse, molest or disturb the peace of Melissa; 2) that Harold would not enter or stay upon the premises of the dwelling of Melissa; and 3) that Harold would not possess firearms. The order was made effective until October 23, 2001, unless sooner terminated or extended. Harold appeals the judgment entering the order of protection. Melissa has declined to file a brief in this court.

Section 455.020 provides that any adult who has been subject to abuse by a present or former adult family or household member, or who has been the victim of stalking, may seek protection from such activities by filing a verified petition alleging such abuse or stalking. Section 455.040 provides that, at the hearing, if the petitioner has proved the allegation of abuse or stalking by a preponderance of the evidence, the court shall issue a full order of protection for a period of time the court deems appropriate, except that the protective order shall be valid for at least one hundred eighty days and for not more than a year. The term "stalking" is defined in § 455.010 as occurring "when an adult purposely and repeatedly harasses or follows with the intent of harassing another adult." The definition goes on to provide that the term "harasses" means "to engage in a course of conduct directed at a specific adult that serves no legitimate purpose, that would cause a reasonable adult to suffer substantial emotional distress." The statute goes on to state that "a course of conduct" means "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose." The statute says that constitutionally protected activity is not included within the meaning of "course of conduct." In *Wallace v. Van Pelt*, 969 S.W.2d 380 (Mo.App.1998), the court considered the meaning of the concept of legitimate activity:

> As used in the context of § 455.010(10), the term "legitimate" means "sanctioned by law or custom; lawful; allowed." *Webster's New Twentieth Century Dictionary* 1035 (2nd ed.1979). As noted, *supra*, the statutory definition of the phrase "course of conduct" explicitly excludes constitutional activity. The legislature wisely included this provision to protect the law from a constitutional challenge that it proscribes constitutionally protected conduct. It severs unconstitutional applications from the reach of the statute. By doing so, it permits the

courts to respect the legislature's goals, while assuring that rights are not trampled.... Thus, for there to be a "course of conduct" such as proscribed by the statute, the conduct must be such that it serves no legitimate purpose.

*Id.* at 385.

Harold denies the truth of Melissa's accusations and attempts to show inconsistencies and improbabilities in her testimony. However, we conclude that the trial court could have believed Melissa. Therefore, we will evaluate Harold's second issue while treating the testimony asserted by Melissa as true.

Harold next argues that the evidence, even if believed, did not amount to stalking. Harold points out that he and Melissa were formerly married, that they have a child, that they have joint legal and physical custody, and that they were involved in a custody dispute in Saline County at the time of the alleged events. Harold also points out that there were no allegations of any physical or verbal confrontations, any threats, any acts of trespass or any type of unlawful activity or any interference with custody. Harold points out that Melissa's motive for filing the petition was reflected in two statements:

> He has no reason to come to my or by my house. He only drives by when it is my week with my daughter and sits watching the children playing outside. He denies ever coming to Sedalia, the children do not understand why he does this.... I do not drive by his house. I told him [Harold] and her [Melissa's lawyer] that when it was my week I want to be left alone because I do not drive by his house.

Thus, Harold suggests, Melissa is stating that she is annoyed that he parked nearby on one occasion, and drove by the premises on another. Harold argues that a parent should not be prohibited from watching his or her child just because that parent does not have actual custody of the child during that time period and just because the other parent is uneasy or nervous about it, or because there is animosity between the parents. Harold also argues that not only was there no stalking shown, but there was no "substantial emotional distress" shown. Harold quotes from *Wallace:*

> By using the phrase "substantial emotional distress," the legislature declared that the offending conduct must produce a considerable or significant amount of emotional distress in a reasonable person; something markedly greater than the level of uneasiness, nervousness, unhappiness or the like which are commonly experienced in day to day living. "Conduct that merely causes alarm or distress to the victim but which would not cause substantial emotional distress to a reasonable person does not qualify as harassment."

*Id.* at 386 (citation omitted).

In amending the adult abuse act to include stalking, the legislature intended to prevent potential violence, and the unnecessary and unjustified infliction of emotional distress. *Id.* at 387. The *Wallace* court pointed out, however, that:

> "The potential for abuse of the stalking provision of the Adult Abuse Act is great. And, the harm that can result is both real and significant, not the least of which will be the stigma that attaches by virtue of a person having been found to be a stalker. Moreover, such a finding could lead to criminal prosecution for violation of the criminal stalking statute, § 565.225. Thus, it is incumbent that the trial court to exercise great vigilance to prevent abuse of the stalking provisions in the Adult Abuse Act and in making sure that sufficient credible evidence ex-

ists to support all elements of the statute before entering a protective order."

*Id.* at 387.

We believe Harold's arguments have merit. We are reluctant to say that the non-custodial parent could not legitimately drive by the house occupied by his child, or park nearby to observe the child playing, when that occurred on only two occasions. We take note of the fact that, in this case, there is no indication that Harold sought to draw Melissa's attention to his presence or that his activities were directed at Melissa.[1] There was no testimony of any prior physical abuse by Harold. There was no testimony of any threats or hateful gestures or evidence of any attempt to alarm Melissa or cause her distress. We fail to see that there was evidence that Harold's actions would have caused significant emotional distress to a reasonable person under the circumstances. We hold, therefore, as a matter of law, that Harold's activities as shown at trial do not constitute a lawful basis for the entering of a full order of protection. *Id.* at 386.

The judgment is reversed.

NEWTON and LOWENSTEIN, JJ., concur.

---

1. Melissa referred to Harold having a "noisy car," but that fact, considered in isolation, does not support the inference that he was trying to draw her attention to himself.