Patty OVERSTREET and Kerry Montgomery, Respondents,

v.

Carl KIXMILLER, Appellant.

No. ED 82452.

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 28, 2003.

Curtis G. Hanrahan, Jefferson City, MO, for appellant.

CLIFFORD H. AHRENS, Presiding Judge.

Carl Kixmiller ("Kixmiller") appeals the judgment of the trial court granting orders of protection against him and in favor of Patty Overstreet ("Overstreet") and Kerry Montgomery ("Montgomery")[1]. Kixmiller claims that the trial court erred in failing to dismiss Overstreet's petition for order of protection for failure to state a claim. He also asserts that the trial court erred in granting orders of protection in favor of Montgomery and Overstreet because there was insufficient evidence to support such orders. We affirm in part and reverse in part.

Kixmiller was the chairman of the Osage County Ambulance District Board. Montgomery and Overstreet were employees of the Ambulance District. In December 2002, Montgomery filed a petition for order of protection. Attached to her petition was a voluntary statement dated November 21, 2002, outlining several conversations and incidents which occurred between her and Kixmiller. Overstreet also filed a similar petition in December 2002. Both cases were heard jointly, and the trial court entered full orders of protection in favor of Montgomery and Overstreet. The present appeal followed.

Kixmiller argues that the trial court erred in entering a full order of protection in favor of Overstreet because there was insufficient evidence to support such an order. Kixmiller specifically claims that no activity or course of conduct was directed to Overstreet. He also argues that his conduct was constitutionally protected, did not constitute more than one incident, nor would it cause a reasonable person substantial emotional distress.

▮ The judgment of the trial court must be affirmed unless there is no substantial evidence to support the judgment, it is against the weight of the evidence, or the trial court erroneously declares or applies the law. *Suhr v. Okorn*, 83 S.W.3d 119, 120 (Mo.App.2002); (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)).

Pursuant to section 455.020 RSMo (2000)[2], any adult who has been the victim of stalking may file a petition for protection alleging such stalking. Section 455.010(10) defines the phrase "stalking" as follows:

"Stalking" is when an adult purposely and repeatedly harasses or follows with the intent of harassing another adult. As used in this subdivision, "harasses" means to engage in a course of conduct directed at a specific adult that serves no legitimate purpose, that would cause a reasonable adult to suffer substantial emotional distress. As used in this subdivision, "course of conduct" means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose. Constitutionally protected activity is not included within the meaning of "course of conduct".

"Legitimate" activity has been defined as meaning "sanctioned by law or custom; lawful; allowed." *Girard v. Girard*, 54 S.W.3d 203, 204 (Mo.App.2001); (*quoting Wallace v. Van Pelt*, 969 S.W.2d 380, 385 (Mo.App.1998)).

---

1. Initially, Kixmiller filed individual appeals; however, upon Kixmiller's motion, this court consolidated both appeals into the present case, ED82452.

2. All further statutory references are to RSMo (2000), unless otherwise indicated.

Pursuant to section 455.040 RSMo (Cum.Supp.2002), the petitioner must prove the allegation of stalking by a preponderance of the evidence in order to obtain a full order of protection.

■ We note that there is real harm which can result in abusing the Adult Abuse Act and its provisions, which includes the stigma that may attach to a defendant who is ultimately labeled a "stalker." *Girard,* 54 S.W.3d at 205; (*quoting Wallace,* 969 S.W.2d at 387). Therefore, trial courts must exercise great care to make certain that sufficient evidence exists to support all elements of the statute before entering a full order of protection. *Id.* at 205–206.

■ In the present case, the only evidence presented by Overstreet was her testimony concerning one conversation with Kixmiller and a statement contained in a memo discussing that sexual harassment in the workplace would not be tolerated. Overstreet testified that she felt threatened by the memo discussing sexual harassment. Overstreet specifically testified about a portion of the memo which made reference to being followed; however, that portion stated that the reputation of the employees would "follow" them. The memo, which was provided to all employees, could be said to have a legitimate business purpose to advise the employees of the sexual harassment policy, consequences and procedure for complaints of that nature within the ambulance district.

Additionally, Overstreet testified that Kixmiller came in "yelling, screaming, harassing . . . ." She related one conversation, in which Kixmiller stated that he would "have the last laugh," which she considered threatening. However, Overstreet testified that she interpreted this incident as a threat to her of being fired. While we are uncertain from the record before us what legitimate purpose was served by Kixmiller's obviously aggressive style of management, we acknowledge that not all the elements of the definition of stalking have been met.

■ Overstreet failed to present sufficient evidence that Kixmiller engaged in a series of acts, which would cause a reasonable adult to suffer substantial emotional distress. We do not believe one personal interaction, and one memo addressing the issue of sexual harassment in the workplace that was provided to several employees, including Overstreet, is sufficient evidence of a "series of acts over a period of time" as is required to meet the definition of stalking. Additionally, the threat of being fired is not, without more, sufficient basis for a full order of protection. The legislature's use of the term "substantial emotional distress" in its definition of stalking under section 455.010(10) indicates that the conduct complained of must result in a considerable amount of distress in a reasonable person. *Girard,* 54 S.W.3d at 205. This emotional distress must be "something markedly greater than the level of uneasiness, nervousness, unhappiness or the like which are commonly experienced in day to day living." *Id.* Although the conduct may cause alarm or distress to the victim, where it would not cause substantial emotional distress to a reasonable person, it does not qualify as harassment. *Id.* Although we note that clearly the workplace was tense, and Kixmiller's interaction with Overstreet during their one conversation may have been evidence of a poor managerial approach, we do not believe this, by itself, is an appropriate basis for an order of protection against stalking. The trial court erred in granting Overstreet a full order of protection because it was not supported by substantial evidence, and the judgment must therefore be reversed. Point granted.

Because of our disposition of Kixmiller's previous point is dispositive, we do not address his contention that Overstreet's petition failed to allege facts sufficient to state a claim.

In his third and final point on appeal, Kixmiller asserts that the trial court erred in entering a full order of protection in favor of Montgomery because there was insufficient evidence to support such an order.

As discussed above, pursuant to section 455.010(10), "stalking" occurs when an adult purposely or repeatedly harasses another adult. Harassment is a course of conduct directed to a certain adult with no legitimate purpose. The conduct must also be that which would cause a reasonable adult to suffer substantial emotional distress. "Course of conduct" means conduct that consists of a series of acts over a period of time, however short, evidencing a continuity of purpose. It does not include constitutionally protected activity.

■ Again, pursuant to section 455.040, a petitioner is required to prove the allegation of stalking by a preponderance of the evidence in order to obtain a full order of protection. Kixmiller argues that Montgomery's petition for an order of protection was motivated only by political and economic reasons. Kixmiller contends that because of his position as the elected chairman of the Osage County Ambulance Board, he had the constitutional right to carry out the functions of his office "as he saw fit." He claims he has "the constitutional right to be the worst manager in the world."

We note that as an elected official, Kixmiller has the right to carry out his duties, and being a poor manager or employer is not the basis for an order of protection where the evidence does not support such an order. However, in Montgomery's case, the evidence was sufficient to estab-lish an offense greater than simply being a poor manager. Montgomery attached an eight-page statement that related several incidents between her and Kixmiller. Kixmiller made verbal threats to her in a loud voice on more than one occasion. Additionally, Montgomery testified that during one conversation with Kixmiller, he walked toward her with his arms flailing. Although Kixmiller argues that these threats were simply concerning Montgomery's job security, we disagree. Montgomery testified that Kixmiller told her she "better watch [her] back," and told her to take the threat for "what it is worth." Kixmiller also told Montgomery that she had "no one to run to" because he had both the board and the sheriff in his "back pocket." Montgomery felt fear for her safety, and she felt the threats were to hurt her physically. During one incident, Montgomery testified she was afraid because of Kixmiller's loud, threatening demeanor.

The evidence was sufficient to establish a pattern of conduct, which consisted of several acts over a period of time directed at Montgomery. These actions served no legitimate purpose. Kixmiller cannot rely upon his office to establish a legitimate purpose in light of the evidence recited above. Threatening employees and making them fear for their physical safety is not considered a legitimate purpose of carrying out his duties as chairman of the Osage County Ambulance Board. Additionally, comments such as Kixmiller's statement that he had the sheriff in his "back pocket," indicating that he had some power over law enforcement, could not be a legitimate purpose of his position. We note that an order of protection may not always be appropriate with respect to a particular management "style" as argued by Kixmiller; however, the evidence of his relationship with Montgomery is of conduct much more serious than a simple

"style" of management or oversight of employees. The statements made which are contained in the record and the manner in which they were made could cause a reasonable adult to suffer emotional distress. There was sufficient evidence to meet the required elements of stalking under section 455.010(10). Therefore, the trial court did not err in granting a full order of protection. Point denied.

The judgment of the trial court is affirmed as to the order of protection of Montgomery; however, the judgment is reversed as to the order of protection granted in favor of Overstreet.

WILLIAM H. CRANDALL JR., J., and LAWRENCE E. MOONEY, J., concur.