Rodney DENNIS, Petitioner–
Respondent,

v.

Waylan HENLEY, Respondent–
Appellant.

No. SD 30012.

Missouri Court of Appeals,
Southern District,
Division One.

June 29, 2010.

Abe Robley Paul, Pineville, MO, for Appellant.

Respondent acting pro se.

JEFFREY W. BATES, Presiding Judge.

Waylan Henley (Henley) appeals from a judgment granting Rodney Dennis (Dennis) a full order of protection pursuant to the Adult Abuse Act (the Act) after a bench trial. *See* §§ 455.010–.090.[1] On appeal, Henley challenges the sufficiency of the evidence to support the judgment. Because the evidence presented was insufficient to authorize the entry of a full order of protection against Henley for stalking, we reverse the judgment. The case is remanded to the trial court with instructions to vacate the full order of protection and deny the request for an order of protection.

## I. Standard of Review

 Appellate review of a court-tried case is governed by Rule 84.13(d). *Foster v. Village of Brownington,* 140 S.W.3d 603, 607 (Mo.App.2004). The trial court's judgment must be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).[2] On appeal, this Court views the evidence in the light most favorable to the judgment and defers to the trial court's credibility determinations. *Binggeli v. Hammond,* 300 S.W.3d 621, 623 (Mo. App.2010).

## II. Factual and Procedural Background

Henley lives in Springdale, Arkansas, and is the developer of a subdivision in Missouri called Sugar Creek Trails Estates. The subdivision's restrictive covenants prohibit the riding of four-wheelers, except on the common roads.

Dennis' girlfriend, Jaymi Hobbie (Jaymi), purchased 30 acres of land from Henley.[3] The property contained a house and two barns. Around March 15, 2008, Dennis and his daughter moved into the house with Jaymi and her two children. Thereafter, Henley asked Dennis if he wanted to buy certain gates stacked up in one of the barns. Dennis told Henley to speak to Jaymi about it. Dennis described Henley as a larger man than himself—Dennis being "5–11, 160, 165 pounds" compared to Henley, who was "6–2 and weighed 220."

In January 2009, Henley's gates were still stacked in the barn. In addition, an auger belonging to Henley was on Jaymi's property. Dennis had borrowed the auger from Henley, with his permission, to dig holes for fence posts. Before January 14, 2009, Dennis and Henley had gotten along well and had no problems with one another.

On January 14, 2009, Henley was sitting in his pickup, which was parked on his property. Jaymi's son, Chris Hobbie (Chris), and Dennis were riding four-wheelers near a creek in the subdivision, looking for their dog. They pulled up right next to Henley's pickup. Henley told

1. All references to statutes are to RSMo Cum. Supp. (2009) unless otherwise specified. All references to rules are to Missouri Court Rules (2010).

2. *Murphy* interpreted the provisions of former Rule 73.01(c). The provisions of that rule were transferred, in essentially the same

form, to Rule 84.13(d) effective January 1, 2000.

3. Because two of the witnesses share the same surname, we use their first names for purposes of clarity.

Dennis and Chris about the restrictive covenant and asked them not to ride their four-wheelers off the common roads. According to Dennis, the conversation "ended in Mr. Henley slamming his door onto me and jumping out and grabbing me and hitting me." At this point, Chris left to call the sheriff. Dennis got loose from Henley and jumped onto the four-wheeler. As he tried to drive away, Henley stepped in front of the vehicle. Henley was knocked down and pinned beneath the four-wheeler. Dennis got off the machine, lifted it up and then helped Henley into his truck. Henley waited for the sheriff, and Dennis went home. According to Dennis, he "was scared" during this altercation with Henley. At the end of Dennis' direct examination, he gave the following testimony:

Q. Okay. And you—you filed this ex parte on January 15, '09; is that right?

A. That's correct.

Q. Has [Henley] made any statements to you or did anything else that might put you in apprehension or fear?

A. Not since the incident on the 14th, no.

When the sheriff arrived, Henley asked if he could pick up his auger. The sheriff went to Jaymi's house and asked Dennis if he would help load Henley's auger into his pickup. Dennis declined because he was concerned about damaging Henley's truck. There was some discussion about Henley returning to pick it up, and Dennis had no problem with that occurring. The sheriff reported this information to Henley and told him to get the auger at a later date.

On January 15, 2009, Dennis filed a *pro se* petition under the Act seeking an order of protection against Henley. The petition alleged that Dennis had no relationship with Henley, other than "we [Dennis and Jaymi] bought property from him as a developer." Dennis further alleged that he was being stalked by Henley. A narrative statement explaining these allegations was included in the petition. In this narrative, Dennis made the following three assertions: (1) on January 14, 2009, Henley choked Dennis and hit him in the face; (2) Henley made repeated telephone calls to Dennis' home; and (3) Henley entered Dennis' property without permission. The petition alleged that Dennis was afraid of Henley because "he has threated [sic] me and said he would come back to finish the issues he says he has." That same day, the trial court entered an *ex parte* order against Henley. A hearing on the petition was scheduled for later that month.

On January 22, 2009, the summons to Henley was returned non est. On January 24, 2009, Henley was in his pickup with his wife when he saw the auger lying "right off the road" on Jaymi's property.[4] He and his wife loaded the auger into the pickup. Dennis did not see Henley enter Jaymi's property or load the auger. Dennis only saw them as they were leaving and told Jaymi. She immediately jumped into her pickup and drove ahead of Henley, blocking his path. Dennis drove his four-wheeler to the top of the hill where Henley was stopped. The record contains nothing to indicate that Henley did anything to cause Dennis to be fearful during this forced confrontation, and Henley was allowed to leave with his auger. After this incident, Dennis and Henley had no further personal contact with one another.

4. The docket sheet contains no entry stating exactly when Henley was served with the *ex parte* order of protection. Henley testified that he was served on January 24th, but there is no indication in the record that service had been made before he picked up his auger.

In March 2009, Dennis observed Henley on the road in front of Jaymi's house on two occasions. On the first occasion, Dennis was standing near the barn with two other persons when Henley drove past and "flipped us the bird." Dennis said this conduct made him "fearful." On the second occasion, Dennis observed Henley park about 100 yards away from Jaymi's house for 15–20 minutes and leave a trailer there. Henley owns nearby property which he shows and sells. Henley was on his way home to Springdale to return the trailer when he learned that potential buyers wanted to see a lot in the subdivision. Henley dropped the trailer off temporarily while he was showing the property. After doing so, he picked up the trailer and took it home. Dennis admitted that Henley owns property in the vicinity which he shows to prospective buyers from time to time. Nevertheless, Dennis opined that he could see no legitimate reason for Henley parking there or leaving his trailer there.

After the *ex parte* order of protection was issued, the case was continued several times. The first trial occurred on April 13, 2009. A full order of protection was issued that day. Because the hearing was not recorded, however, Henley's counsel filed a motion to set aside the judgment and hold a new trial on the record. The trial court granted the request, vacated the April 2009 judgment and scheduled another hearing.

The case was tried a second time on June 3, 2009. After listening to the evidence, the court decided that Dennis proved he was being stalked by Henley. A full order of protection, effective for one year, was entered against Henley. This appeal followed.

### III. Discussion and Decision

"Any adult who has been subject to abuse by a present or former adult family or household member, or who has been the victim of stalking, may seek relief ... by filing a verified petition alleging such abuse or stalking by the respondent." § 455.020 RSMo (2000). Since Dennis and Henley do not fall within any of the various definitions of what constitutes a family or household member, Dennis could only seek an order of protection based upon an allegation of stalking. § 455.020 RSMo (2000); *Towell v. Steger*, 154 S.W.3d 471, 473 (Mo.App.2005). Stalking is defined to occur when:

[A]n adult purposely and repeatedly engages in an unwanted course of conduct that causes alarm to another person when it is reasonable in that person's situation to have been alarmed by the conduct. As used in this subdivision:

(a) "**Alarm**" means to cause fear of danger of physical harm;

(b) "**Course of conduct**" means a pattern of conduct composed of repeated acts over a period of time, however short, that serves no legitimate purpose. Such conduct may include, but is not limited to, following the other person or unwanted communication or unwanted contact; and

(c) "**Repeated**" means two or more incidents evidencing a continuity of purpose.

§ 455.010(10) (bold emphasis in original). For conduct to have "no legitimate purpose," it must be found to be not sanctioned by law or custom, to be unlawful, or not allowed. *Towell*, 154 S.W.3d at 475.

Dennis' petition alleged that he was being stalked by Henley. To obtain a full order of protection, Dennis had to prove this allegation by a preponderance of the evidence. *See* § 455.040.1; *Clark v. Wuebbeling*, 217 S.W.3d 352, 354 (Mo.App.2007); *Vinson v. Adams*, 188 S.W.3d 461, 464–65 (Mo.App.2006).

"Because there is real harm that can result in abusing the Adult Abuse Act and its provisions, including the stigma that may attach to a respondent who is ultimately labeled a 'stalker,' trial courts must exercise great care to ensure that sufficient evidence exists to support all elements of the statute before entering a full order of protection." *McGrath v. Bowen,* 192 S.W.3d 515, 517 (Mo.App. 2006); *Overstreet v. Kixmiller,* 120 S.W.3d 257, 259 (Mo.App.2003); *see Glover v. Michaud,* 222 S.W.3d 347, 351 (Mo.App.2007). The Act is not, nor was it intended to be, "a solution for minor arguments between adults." *Binggeli v. Hammond,* 300 S.W.3d 621, 624 (Mo.App.2010). Henley contends that Dennis failed to meet his burden of proof because there was insufficient evidence Henley engaged in a course of conduct that reasonably caused alarm to Dennis. This Court is constrained to agree.

In order for Dennis to prove his entitlement to a full order of protection, he had to present substantial evidence that Henley: (1) purposely and repeatedly; (2) engaged in an unwanted course of conduct; (3) that caused alarm to Dennis; (4) when it was reasonable in his situation to have been alarmed by the conduct. § 455.010(10). As defined by this subsection of the Act, a "course of conduct" must be composed of repeated acts over a period of time that serve no legitimate purpose. § 455.010(10)(b). "Repeated" is further defined to require two or more incidents demonstrating a continuity of purpose. § 455.010(10)(c). Alarm requires proof that the petitioner was placed in "fear of danger of physical harm." § 455.010(10)(a). Proof of alarm involves both a subjective and an objective component. *Glover,* 222 S.W.3d at 352. Thus, Dennis had to present substantial evidence that: (1) Henley's conduct caused Dennis to subjectively fear physical harm; and (2) a reasonable person under the same circumstances would have feared physical harm. *Id.; Schwalm v. Schwalm,* 217 S.W.3d 335, 337 (Mo.App. 2007); § 455.010(10). The evidence in the case at bar was insufficient to prove a course of conduct that actually caused Dennis to be placed in fear of physical harm or that would have caused a reasonable person in Dennis' situation to be alarmed.

Based upon this Court's review of the record, the incident that occurred on January 14, 2009, was the only event that actually caused Dennis to be alarmed or that would have caused a reasonable person in Dennis' situation to be alarmed. This was the only time when Dennis subjectively feared danger of physical harm or when a reasonable person in his situation would have done so. Although Dennis alleged in his petition that Henley had engaged in other conduct prior to January 14th, the evidence at trial did not prove that allegation. Dennis testified that he and Henley had no problems prior to the January 14th altercation and that they got along well. Dennis did testify that he "was scared" during that incident. Notwithstanding that testimony, one event alone is insufficient to prove stalking because of the absence of repeated acts over a period of time. In addition, Dennis gave the following testimony during his direct examination:

Q. Okay. And you—you filed this ex parte on January 15, '09; is that right?

A. That's correct.

Q. Has [Henley] made any statements to you or did anything else that might put you in apprehension or fear?

A. Not since the incident on the 14th, no.

"It is well-settled that a party is bound by his own testimony which is not corrected or explained." *Ewanchuk v. Mitchell*, 154 S.W.3d 476, 481 (Mo.App.2005). While the record does contain testimony about the auger incident in January 2009 and the two incidents in March 2009, none of these events is sufficient to prove the requisite course of conduct necessary for stalking to exist.

When Henley picked up his auger on January 24th, the evidence established that Jaymi used her pickup to prevent Henley and his wife from leaving. Dennis then drove his four-wheeler, of his own volition, to where Henley and his wife were stopped. Dennis presented no evidence that Henley said or did anything to cause Dennis to be placed in fear of physical harm. Based upon the above-quoted testimony from Dennis, the only reasonable inference is that no such conduct by Henley occurred. Indeed, an objective observer would be forced to conclude that Dennis and Jaymi were the aggressors in provoking this encounter with Henley.

There also was evidence that Henley parked his truck and left a trailer near Jaymi's house while showing property in the vicinity. Dennis presented no evidence that this conduct caused him to subjectively fear the danger of physical harm from Henley. The record contains no evidence to support the conclusion that a reasonable person would have feared the danger of physical harm from such conduct. Moreover, an act cannot be used to prove the course of conduct required for stalking unless that act has no legitimate purpose. § 455.010(10)(b). Dennis admitted that Henley owned property in the vicinity and often showed the property to prospective buyers. Such conduct has a legitimate purpose, notwithstanding Dennis' subjective and conclusory characterization to the contrary.

Finally, there was evidence that Henley made a rude hand gesture directed at Dennis while driving past Jaymi's property. Although such conduct may well have been vulgar and boorish, it is not behavior which would cause a reasonable person in Dennis' situation to be placed in fear of physical harm. *See, e.g., George v. McLuckie*, 227 S.W.3d 503, 508–10 (Mo.App.2007) (testimony about harassing text messages, driving by petitioner's place of employment and "flipping [petitioner] off" that only caused irritation and inconvenience, but not fear of danger of physical harm, was insufficient to prove stalking). Therefore, Dennis' subjective testimony that this conduct made him "fearful" is insufficient. *See C.B. v. Buchheit*, 254 S.W.3d 207, 209 (Mo.App.2008).

In sum, Dennis presented insufficient evidence that Henley engaged in the statutorily-required "course of conduct" that is essential to prove stalking, as defined by § 455.010(10). The one incident that occurred on January 14, 2009, was insufficient to support the issuance of a full order of protection against Henley for stalking. *See, e.g., H.K.R. v. Stemmons*, 295 S.W.3d 220, 224 (Mo.App.2009) (one incident insufficient); *Overstreet v. Kixmiller*, 120 S.W.3d 257, 259 (Mo.App.2003) (one personal interaction and an office memo insufficient). Henley's point on appeal is granted. The judgment is reversed, and the cause is remanded. The trial court is instructed to vacate the full order of protection and deny Dennis' petition. *Glover*, 222 S.W.3d at 353.

BARNEY and BURRELL, JJ., concur.