**S.D., Petitioner–Respondent,**

v.

**Melinda Gail "Mindy" WALLACE, Respondent–Appellant.**

**No. SD 31296.**

Missouri Court of Appeals, Southern District, Division One.

March 27, 2012.

James M. McClellan, Sikeston, MO, for Appellant.

Respondent, S.D., East Prairie, MO, acting pro se.

DON E. BURRELL, Presiding Judge.

Melinda Gail "Mindy" Wallace ("Appellant") appeals the "Judgment Entry Full Order of Protection" ("the full order") granted to S.D. ("Petitioner") that ordered Appellant, among other things, not to abuse, stalk, or disturb the peace of Petitioner wherever Petitioner might be. *See* section 455.040.[1]

In a single point relied on, Appellant contends "the parties did not have a 'family or household relationship' "[2] and "Ap-

1. All statutory references are to RSMo Cum. Supp.2011. All rule references are to Missouri Court Rules (2011). Sections 455.010 to 455.085 are "commonly referred to as the Adult Abuse Act." *Pratt v. Lasley*, 213 S.W.3d 159, 159 (Mo.App. W.D.2007).

2. Appellant's first assertion purports to challenge a claim never made by Petitioner. And the trial court found that the parties were never members of the same family or household. In any event, the issue is not relevant to the resolution of this appeal. Being a

pellant's alleged conduct" did not constitute "stalking" as required by "the Adult Abuse Act." [3] Because no substantial evidence supported the necessary element of stalking that Appellant's conduct would have caused a reasonable person in Petitioner's situation to fear physical harm, we reverse the judgment and remand the matter to the trial court to vacate the full order.

## Applicable Principles of Review and Governing Law

 "[T]he decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "Substantial evidence is competent evidence from which the trier of fact could reasonably decide the case." *Wallace v.*

*Van Pelt*, 969 S.W.2d 380, 382 (Mo.App. W.D.1998).

Section 455.040.1 requires a petitioner seeking a full order of protection to "prove[ ] the allegation of abuse or stalking by a preponderance of the evidence." "Stalking statutes should be construed narrowly enough to prevent serious abuse, but broadly enough to maximize victim protection." *Towell v. Steger*, 154 S.W.3d 471, 476 (Mo.App. S.D.2005). Because harm can result from an abuse of the Adult Abuse Act, "trial courts must exercise great care to make certain that sufficient evidence exists to support all elements of the statute before entering a full order of protection." [4] *Overstreet v. Kixmiller*, 120 S.W.3d 257, 259 (Mo.App. E.D. 2003).

## Facts and Procedural Background

Petitioner filed her "Adult Abuse/Stalking Petition for Order of Protection" on

---

current or former family or household member is not required to support the issuance of an order of protection based on stalking as set forth in section 455.020.1. "[A] full adult protection order may be entered only upon proof that the petitioner was: (1) subjected to abuse by a present or former adult family or household member *or* (2) subjected to stalking." *H.K.R. v. Stemmons*, 295 S.W.3d 220, 223 (Mo.App. W.D.2009). (Emphasis added.) Here, the petition did not claim abuse, and the full order provided that Petitioner "proved the allegations of abuse *or stalking.*" (Emphasis added.)

3. Appellant's point is defective in that it provides no legal reason(s) supporting the claim of reversible error in the context of the case as required by Rule 84.04(d)(1)(C). *See Thompson v. Flagstar Bank, FSB*, 299 S.W.3d 311, 315 (Mo.App. S.D.2009) (among other deficiencies, appellants' brief "contain[ed] bald assertions of trial court error[ and] provide[d] no sense of the facts which support their contentions in violation of Rule 84.04(d)(1)(C)"). Because we are able to discern the basis for Appellant's claim from the argument section of her brief, the deficiency

does not impede appellate review and we exercise our discretion to review her claim on the merits. *Dixon v. Thompson*, 235 S.W.3d 568, 571 (Mo.App. S.D.2007). Petitioner did not file a brief. There is no requirement to file a respondent's brief, but its absence leaves us without any contrary argument(s) that might have been made. *In re Estate of Klaas*, 8 S.W.3d 906, 908 (Mo.App. S.D.2000).

4. "[A] full order of protection has criminal implications" as a violation of such an order constitutes a criminal offense. *C.H. v. Wolfe*, 302 S.W.3d 702, 706 (Mo.App. W.D.2009). Title 18, United States Code, Section 922(g) "renders unlawful the possession of a firearm by an individual subject to certain restraining orders." *United States v. Miller*, 646 F.3d 1128, 1131 (8th Cir.2011). We do not decide the issue in this particular case, but a full order of protection that meets the requirements of this federal statute may impinge on the ability to work in certain occupations, and pursue some recreations. *See C.H.*, 302 S.W.3d at 706. Additionally, a certain stigma may attach to the finding that someone was a "stalker." *Overstreet*, 120 S.W.3d at 259.

March 8, 2011. As is common for such petitions, it was completed using a pre-printed form that contained various boxes that could be checked or left blank and sections that called for handwritten text. By checking the applicable box, Petitioner averred that she and Appellant "have no relationship other than Respondent has stalked [Petitioner]." A handwritten portion of the petition identified Appellant as "the mother of [K.W.] in [sic] which I have filed charges on for harassment." Petitioner alleged that the last act of stalking occurred on March 3, 2011. Petitioner alleged she was "afraid of [Appellant], and there is an immediate and present danger of abuse or stalking of me because: [ ] *[s]he is upset at me because of her daughter. She is constantly stalking me with her car.*" (Underlining used to indicate the hand-written portion of the averment.) The box preceding the statement "placed or attempted to place me in apprehension of immediate physical harm" was *not* checked by Petitioner. Based on the contents of the petition, the trial court entered an *ex parte* order of protection on March 8, 2011, and it set the matter for trial.

Petitioner's request for a full order of protection was tried to the court on March 22, 2011. The evidence adduced at trial is summarized here in the light most favorable to the judgment. *See H.K.R.*, 295 S.W.3d at 221. Petitioner testified that Appellant was "the parent of one of [Petitioner's] old friends." When asked by the trial court what prompted Petitioner to seek an order of protection, she replied, "Well, there are many instances where I feel that I've needed protection against her. Not only does she drive her car around town and stare at me out her windows and not necessarily follow, but she makes—makes it known that she's there." Petitioner further testified that Appellant would roll down her car window and "turn her head" and that these actions intimidat-ed Petitioner and made her "feel scared." When asked how many times this had occurred, Petitioner replied, "Many. It's not—It hasn't just been me by myself. If I've been with my friends, just anything. Anytime she's been in town. So multiple times." On cross-examination, Petitioner indicated that similar incidents had also happened on Saturday nights as many as "20, 30" times.

Petitioner specifically recalled one incident that occurred around 9:00 p.m. on a school night and another incident that occurred on a Saturday night when she was riding in a car late at night with friends. During this particular Saturday night incident, Appellant's car approached a stop sign as a car Petitioner was riding in also approached. Petitioner related that Appellant "sat on her side of the stop sign and just glared like we were the most disgusting things she's ever seen." Petitioner also recalled an instance that happened at a "home football game." Petitioner saw Appellant and felt uncomfortable because Appellant stared at her, whispered about her, and giggled at her.

Petitioner testified that she had "a long-time dispute" with Appellant's daughter, K.W. Both Petitioner and K.W. were students at the same high school. Petitioner said that K.W. shoved her in the hallways and screamed at her in the cafeteria. Petitioner said her problems with Appellant started "[w]henever [Appellant's] daughter stopped being [Petitioner's] friend."

On cross-examination, Petitioner was asked to clarify a reference to Appellant "drop[ping] her daughter off to fight girls[,]" and the following exchange ensued:

> [Petitioner]: At the beginning of, I think it was this school year, she—[K.W.] had called my friend [ ] and said,

"Why do you keep staring at me in the hallways? I'm coming over. We're taking care of this." [Appellant] brought her to [the friend's] house. [K.W.] had every intention of fighting [the friend] that day, jumping in her face, telling she wasn't going to do anything—

[Appellant's counsel]: Were you there at that incident?

[Petitioner's mother]: Uh-huh.

[Petitioner]: Yes, sir, I was there.

Petitioner further testified that K.W. and the friend fought, and the friend struck K.W.

The trial court took the case under advisement and entered the full order two days later, finding "pursuant to [s]ection 455.040 RSMo that [Petitioner] ha[d] proved the allegations of abuse or stalking." The term of the full order was for one year—a term that could be extended upon application and hearing. This appeal timely followed the trial court's denial of Appellant's "motion for reconsideration and/or new trial."

### Analysis

Under section 455.010(13), "stalking" occurs

> when any person purposely and repeatedly engages in an unwanted course of conduct *that causes alarm* to another person when it is *reasonable in that person's situation* to have been *alarmed* by the conduct. As used in this subdivision:

(a) **"Alarm"** means to cause *fear of danger of physical harm;*

(b) **"Course of conduct"** means a pattern of conduct composed of *repeated* acts over a period of time, however short, that serves no legitimate purpose. Such conduct may include, but is not limited to, following the other person or unwanted communication or unwanted contact; and

(c) **"Repeated"** means *two or more* incidents evidencing a continuity of purpose. (Bolding as in original; italics added.)

Appellant first claims that even "[i]f the trial court believed the testimony of [Petitioner], there is no dispute this drive by on a public road occurred only once." This assertion is clearly refuted by the evidence previously recited. As Petitioner's testimony constituted substantial evidence that there were two or more incidents, this portion of Appellant's argument fails.

However, Appellant's alternative contention—that no evidence supported the necessary element of alarm—does have merit. To have engaged in stalking, the offender must have "(1) purposely and repeatedly; (2) engaged in an unwanted course of conduct; (3) that caused alarm to [the petitioner]; (4) when it was reasonable in [the petitioner's] situation to have been alarmed by the conduct." *Glover v. Michaud*, 222 S.W.3d 347, 352 (Mo.App. S.D.2007).[5] Thus, "proof of stalking involves both a subjective and an objective component." *Id.*

***

5. Appellant cites *In Re R.T.T.*, 26 S.W.3d 830 (Mo.App. S.D.2000) and argues that "[n]o abuse or emotional harm was proven." Petitioner did not have the burden to prove that she was abused or that she suffered emotional harm in order to show that she was stalked. In *R.T.T.*, the court construed a now repealed provision, section 455.505.1, regarding child protection orders by considering the former interpretation of Section 455.010. Section

455.010 was amended in 2004 to change the definition of stalking and add the definition of alarm. By comparison, "abuse" in this context includes harassment, and harassment addresses, *inter alia*, a "course of conduct ... [that] would cause a reasonable adult to suffer *substantial emotional distress and must actually cause substantial emotional distress* to the petitioner." Section 455.010(1)(d).

As previously indicated, "alarm" means "to cause fear of danger of physical harm[.]" [6] For instance, in *Dennis v. Henley*, 314 S.W.3d 786 (Mo.App. S.D.2010), the petitioner testified that he was "fearful" when the respondent (who was not a family or household member) drove past him and made "a rude hand gesture." *Id.* at 791. Trouble between the parties began with an earlier dispute over the riding of four-wheel vehicles "off the common roads." *Id.* at 788. The petitioner, who was smaller than the respondent, testified that the respondent hit and choked him on that occasion and that he felt "scared" during the assault. *Id.* While we found the assault sufficient to cause a fear of physical harm, we found the "rude hand gesture" insufficient to qualify as an incident causing a fear of physical harm. *Id.* at 791.

In *C.H.*, the respondent was a sheriff's deputy and the petitioner was his neighbor. 302 S.W.3d at 708. The two men disputed respondent's control of his dog and where he chose to legally park his vehicle. The petitioner also alleged that respondent stared into the windows of his home, and, on more than one occasion, "watched" him. *Id.* at 704. The petitioner "testified that it was 'kind of scary having . . . somebody who's supposed to be an officer that carries a weapon out there staring in our windows[.]' " *Id.* at 707. The petitioner did not assert that respondent's "staring" put him in reasonable fear of danger of physical harm. *Id.* at 707. The Western District held that the petitioner had not "met his burden to establish by a preponderance of the evidence that [respondent's] course of conduct, however inconvenient or irritating to [petitioner],

caused him to fear the danger of physical harm at all, let alone reasonably." *Id.* at 708.

Here, Petitioner testified that she felt she "needed protection against [Appellant]" and that Appellant's behavior made her "feel scared." Assuming, *arguendo*, the trial court could reasonably infer from this statement that Petitioner actually feared she would be physically harmed by Appellant, the subjective component of the element of alarm would have been met. But Petitioner also had to prove that a reasonable person in Petitioner's situation would also have feared physical harm by Appellant—the objective component of alarm.

We initially note that in stating her claim for a protective order, Petitioner did not check the box on the petition that would claim Appellant had "placed or attempted to place [Petitioner] in apprehension of immediate physical harm[.]" Then, at trial, Petitioner testified that Appellant stared and glared at her from another vehicle on multiple occasions and whispered and giggled at a football game when Petitioner walked past. Petitioner did not offer any evidence that Appellant knowingly took K.W. to the friend's house for the purpose of having a fight with the friend or with Petitioner, or that Appellant was otherwise behind any of K.W.'s behavior as described by Petitioner. Petitioner did not claim Appellant was following her. Petitioner did not offer any evidence showing that Appellant had ever engaged in any violent acts or that Petitioner had any other reason to believe Appellant was a violent person. Petitioner presented no evidence that Appellant said anything,

---

6. Section 455.010(13)(a). As the Western District noted in *Binggeli v. Hammond*, 300 S.W.3d 621, 623–24 n. 3 (Mo.App. W.D.2010), "'Fear of danger of physical harm' would appear to be synonymous with 'fear of physical harm' since 'physical harm' is, in fact, dangerous. However, the superfluous statutory verbiage is of no consequence to our discussion herein."

made any gestures, or otherwise communicated any specific thing to Petitioner that would cause a reasonable person to believe he or she was in danger of physical harm from Appellant. As a result, no substantial evidence supported the existence of this necessary element of stalking.

Appellant's point is granted. The judgment is reversed, and the cause is remanded to the trial court which is directed to vacate the full order.

RAHMEYER and LYNCH, JJ., Concur.