**N.L.P., Respondent,**

v.

**C.G.W., Appellant.**

**No. ED 99738.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 17, 2013.

Steven A. Waterkottw, St. Louis, MO, for appellant.

N.L.P., Fenton, MO, Acting Pro Se.

ANGELA T. QUIGLESS, Judge.

## I. INTRODUCTION

C.G.W. appeals the judgment of the Circuit Court of Jefferson County entering a full order of protection under Missouri's Adult Abuse Act, sections 455.005–455.090,[1] against him and in favor of his next-door neighbor, N.L.P.[2] C.G.W. argues the trial court erred in entering a full order of protection because N.L.P. failed to prove that C.G.W. engaged in an un-

[1] All statutory references are to RSMo (Supp. 2011) unless otherwise indicated.

[2] N.L.P., the respondent on appeal, did not file a brief. "A respondent is not required to file a brief, but without one, we must adjudicate [the] claim of error without benefit of whatever argument [the respondent] might have presented." *Turner v. Mo. Dep't of Conservation*, 349 S.W.3d 434, 438 n. 1 (Mo.App. S.D.2011) (quotation omitted).

wanted course of conduct that served no legitimate purpose and that caused alarm to N.L.P. We reverse and remand.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The record reveals that N.L.P. lives with her husband on property adjoining C.G.W.'s property. The three of them are the only people living on a shared road that provides ingress to and egress from their homes. N.L.P. filed a petition for an order of protection against C.G.W., alleging that he was stalking her by: (1) making "false reports to animal control"; (2) making constant "harassing phone calls"; and (3) "us[ing] the building department and solid waste department to harass [her]." N.L.P. stated that she was "scared for [her] life" and that she did not know "what [C.G.W.] is capable of." The trial court entered an ex parte order of protection against C.G.W.

Pursuant to section 455.040.1, the trial court conducted a hearing on N.L.P.'s petition. After hearing the evidence, the trial court noted that there had been peace between the parties and entered a judgment granting a full order of protection, effective for one year, against C.G.W. and in favor of N.L.P. The order of protection prohibits C.G.W. from, among other things, stalking N.L.P. or communicating with her in any manner. C.G.W. appeals.

## III. STANDARD OF REVIEW

■ In an appeal from a court-tried civil case, our review is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *White v. Dir. of Revenue*, 321 S.W.3d 298, 307–08 (Mo. banc 2010). Accordingly, this court will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*,

536 S.W.2d at 32. "This Court views the evidence and permissible inferences drawn from the evidence in the light most favorable to the judgment." *Bateman v. Platte County*, 363 S.W.3d 39, 43 (Mo. banc 2012). "Because of the potential stigma that may attach to an individual who is labeled a 'stalker' under the Missouri Adult Abuse Act, trial courts must exercise great care . . . to ensure sufficient evidence exists to support all elements of the statute before entering a full order of protection." *M.L.G. v. R.W.*, 406 S.W.3d 115, 117 (Mo. App. E.D.2013).

## IV. DISCUSSION

■ In his sole point on appeal, C.G.W. argues the trial court erred in entering a full order of protection against him because the evidence was insufficient. Specifically, C.G.W. maintains that N.L.P. failed to prove he engaged in an unwanted course of conduct that served no legitimate purpose and that caused alarm to N.L.P. We agree.

Missouri's Adult Abuse Act allows any adult who has been the victim of stalking to seek relief by filing a verified petition alleging such stalking by the respondent. Mo.Rev.Stat. § 455.020.1. The trial court must hold a hearing on the petition. Mo. Rev.Stat. § 455.040.1. At the hearing, the trial court shall issue a full order of protection "if the petitioner has proved the allegation of . . . stalking by a preponderance of the evidence." *Id.*

The legislature defined "stalking" as "when any person purposely and repeatedly engages in an unwanted course of conduct that causes alarm to another person when it is reasonable in that person's situation to have been alarmed by the conduct." Mo.Rev.Stat. § 455.010(13). The legislature further defined "stalking" by providing definitions for "alarm," "course of conduct," and "repeated":

(a) "**Alarm**" means to cause fear of danger of physical harm;

(b) "**Course of conduct**" means a pattern of conduct composed of repeated acts over a period of time, however short, that serves no legitimate purpose. Such conduct may include, but is not limited to, following the other person or unwanted communication or unwanted contact; and

(c) "**Repeated**" means two or more incidents evidencing a continuity of purpose.

*Id.*

■ "[A]n act cannot be used to prove the course of conduct required for stalking unless that act has no legitimate purpose." *Dennis v. Henley*, 314 S.W.3d 786, 791 (Mo.App. S.D.2010). "An activity with a legitimate purpose is one that is lawful or is allowed." *M.D.L. v. S.C.E.*, 391 S.W.3d 525, 529 (Mo.App. E.D.2013).

The record of the hearing indicates that N.L.P. testified concerning numerous acts by C.G.W. that do not meet the requisite course of conduct for stalking because the acts had a legitimate purpose. According to N.L.P., C.G.W. called the following entities with complaints about N.L.P.: (1) the county building code enforcement division regarding a mobile home in disrepair and landscaping issues on N.L.P.'s property; (2) the county solid waste division concerning concrete blocks and other building materials remaining from construction of N.L.P.'s home; (3) the company building her home and the police as to a construction vehicle blocking the shared road; (4) the police with regard to noise from con-struction of her home; and (5) the county animal control division regarding alleged abuse of N.L.P.'s dog. None of these telephone calls involved unlawful behavior. Although C.G.W.'s conduct may have been the irritating conduct of a zealous neighbor,[3] it had the legitimate purpose of ensuring compliance with governing law on neighboring property. In addition, the phone calls did not involve unwanted communication by C.G.W. with N.L.P.[4]

Likewise, N.L.P. did not demonstrate that C.G.W. following her "almost to [her] work" was an act that served no legitimate purpose. On cross-examination, N.L.P. admitted that it happened only once. N.L.P. acknowledged that it was possible, given the fact that C.G.W. was the only other person living on their road, that C.G.W. "was just leaving [his home] at the same time." N.L.P. also admitted that C.G.W. may have been going to shop at the grocery store where she worked or to eat at a nearby restaurant. This evidence does not support a finding that C.G.W. following her on that occasion was an act with no legitimate purpose or that caused alarm. Therefore, N.L.P. cannot use the act to prove the course of conduct required for stalking.

■ The remainder of N.L.P.'s evidence consisted of C.G.W.'s acts of unwanted communication with her. Specifically, N.L.P. presented evidence that C.G.W.: (1) called her ten to fifteen times per week regarding his request for a financial contribution toward repairing the shared road; (2) left a voicemail concerning AmerenUE

---

3. N.L.P. admitted that she received several citations from the code enforcement and solid waste divisions. On the other hand, N.L.P. testified that the animal control division "found nothing" after investigating C.G.W.'s complaint and that the police took no action on his reports of noise and blocking the road.

4. N.L.P. also presented the testimony of John Webb, an employee of Jefferson County who handled building inspection and solid waste complaints. However, Mr. Webb's testimony does not support N.L.P.'s stalking allegation because he admitted on cross-examination that he had never seen C.G.W. interact with N.L.P.

trimming her tree; (3) left a voicemail threatening to reveal to authorities his allegation that N.L.P. acquired her land by deceit; and (4) "flipped [her] off" while driving past her home.

Even assuming these four acts of C.G.W. had no legitimate purpose, N.L.P. failed to prove her allegation of stalking because she did not prove the element of alarm. "Proof of alarm involves both a subjective and an objective component." *Skovira v. Talley*, 369 S.W.3d 780, 785 (Mo.App. S.D.2012). Accordingly, N.L.P. had to prove that: (1) C.G.W.'s conduct caused her to subjectively fear physical harm; and (2) a reasonable person under the same circumstances would have feared physical harm. *See id;* Mo.Rev.Stat. § 455.010(13).

Here, none of C.G.W.'s actions caused N.L.P., reasonably or otherwise, to fear physical harm. N.L.P. alleged in her petition that she was "scared for [her] life" and did not know "what [C.G.W.] is capable of," but she did not testify to that or any other fear of physical harm at trial. Instead, N.L.P.'s testimony revealed that she feared only financial harm from C.G.W.:

Q. Has [C.G.W.] ever said he is going to hurt you?

A. No, but his actions, and his words, and . . . he is trying to hurt me financially.

Q. Has he ever threatened to kill you?

A. Not to kill me, no.

Q. Has he ever threatened to hurt you?

A. To sue me.

Q. Okay. So he has threatened to sue you?

A. To sue me.

Given the absence of any evidence that C.G.W.'s acts caused N.L.P. to fear physical harm, she failed to prove the subjective component of alarm. *See, e.g., Binggeli v.*

*Hammond,* 300 S.W.3d 621, 625 (Mo.App. W.D.2010); *George v. McLuckie,* 227 S.W.3d 503, 509 (Mo.App. W.D.2007); *Glover v. Michaud,* 222 S.W.3d 347, 352 (Mo. App. S.D.2007). Moreover, although C.G.W.'s phone calls may have been annoying and his hand gesture rude, his actions did not constitute behavior that would cause a reasonable person in N.L.P.'s situation to fear physical harm. *See Dennis,* 314 S.W.3d at 791.

"[T]he stalking provision of the Adult Abuse Act was not meant to be a panacea for the minor arguments that frequently occur between neighbors." *C.H v. Wolfe,* 302 S.W.3d 702, 707 (Mo.App. W.D.2009) (quotation omitted). The record reveals a dispute between neighbors. However, N.L.P. failed to prove the necessary element of alarm and therefore failed to prove that C.G.W.'s conduct was stalking as defined in the Adult Abuse Act. We conclude that the trial court's judgment entering a full order of protection in favor of N.L.P. is not supported by substantial evidence. Point one is granted.

## V. CONCLUSION

We reverse the judgment and remand the cause with instructions to the trial court to vacate the full order of protection and deny N.L.P.'s petition.

MARY K. HOFF, P.J., and KURT S. ODENWALD, J., Concurs.