In the Missouri Court of Appeals
 Eastern District
 DIVISION TWO

H.E.S., ) ED108988
 )
 Respondent, ) Appeal from the Circuit Court
 ) of St. Louis County
v. ) 20SL-PN01569
 )
T.J.B., ) Honorable Nicole S. Zellweger
 )
 Appellant. ) Filed: June 29, 2021

 T.J.B. 1 (Defendant) appeals from the trial court’s judgment granting H.E.S. (Victim) a

Full Order of Protection pursuant to the Adult Abuse Act (Act). 2 We affirm.

 BACKGROUND

 On April 21, 2020, Victim filed a Petition for Order of Protection (Petition) in the Circuit

Court of St. Louis County. Victim’s Petition stated that Defendant had been stalking her and she

was afraid that he might hurt her or her daughter. The trial court entered an Ex Parte Order of

Protection, and a hearing was set for June 8, 2020. The hearing was conducted remotely via

Zoom, and adduced the following evidence.

 Victim testified she and Defendant were previously in a romantic relationship and resided

together. Their relationship began around the time when Victim’s daughter was one year old.

1
 Both parties full names are redacted pursuant to Section 595.226 RSMo (2017).
2
 See Section 455.040 RSMo. All statutory references are to RSMo (2016) as updated, unless otherwise indicated.
Victim moved out of her “living situation” with Defendant in March of 2019, and asked him to

stop contacting her. In December of 2019, Victim had to block multiple phone numbers and

three email accounts to prevent Defendant from contacting her. Victim also sent Defendant

nineteen emails between February 6, 2020, and April 20, 2020, telling him to leave her alone.

She told him she would get a “cease and desist” order, but he was undeterred.

 On April 20, 2020, Victim received seven emails from Defendant. Around 9 a.m.,

Defendant parked a block away from Victim’s home, and approached her then six-year-old

daughter in Victim’s back yard. Defendant refused to leave and said he had already called the

police. Victim stated that Ferguson police told her they saw Defendant drive by her house. She

said that her neighbor, who was a retired Ferguson police officer, witnessed these events and

actually was the one who called the police. Victim testified Defendant’s emails and phone calls

were annoying at first, but when she told him to leave her alone and he showed up at her house,

she became scared because he didn’t believe he was crossing boundaries.

 Defendant continually referred to Victim’s child as “my daughter” throughout the

hearing, even though he is not the child’s father. He agreed he made multiple attempts to contact

Victim against her will, but only because he wanted to see “my daughter.” He had not seen “my

daughter” since September of 2019, and his emails were trying to determine how “my daughter”

was faring. He stated he was “trying to resolve this peacefully.” He admitted his contact was

unwanted by Victim. He also admitted going to Victim’s house three times knowing she did not

want him there. Defendant said he did not intend to hurt Victim, and he “gave her seven months

to try and sort this out peacefully.”

 Defendant called Elizabeth Bennett (Bennett) as a witness. Bennett testified she was a

counselor who had been providing Defendant with mental health counseling since 2018. She

 2
stated she knew both parties to this case and spent time talking to Defendant about his anxiety

over his inability to see Victim’s daughter.

 After hearing the testimony, the trial court found that Defendant’s course of conduct

merited an Order of Protection. The trial court found that Defendant’s conduct in attempting to

contact Victim was initially justifiable, but became unjustifiable once Victim told him that she

did not want any further contact with him.

 This appeal follows.

 DISCUSSION

 Defendant raises one point on appeal arguing the trial court “erred and abused its

discretion and misapplied RSMo § 455.010-455.085” in granting Victim a full order of

protection against Defendant because there was insufficient evidence that Defendant’s acts

satisfied the statutory definitions of abuse, domestic violence, or stalking pursuant to Section

455.010. Victim asserts that Defendant’s actions met Section 455.010’s definition of

harassment, which constitutes abuse under the Act.

 Standard of Review

 “We review orders of protection under the Act ‘the same as in any other court-tried case;

we will uphold the trial court’s judgment as long as it is supported by substantial evidence, is not

against the weight of the evidence, and does not erroneously declare or apply the law.’” G.E.G.

v. Gauert, 620 S.W.3d 676, 678 (Mo. App. W.D. 2021) (quoting M.N.M. v. S.R.B., 499 S.W.3d

383, 384 (Mo. App. E.D. 2016)). “Substantial evidence is evidence that, if believed, has some

probative force on each fact that is necessary to sustain the circuit court’s judgment.” Ivie v.

Smith, 439 S.W.3d 189, 199 (Mo. banc 2014). We defer to the circuit court’s credibility

 3
determinations and consider the evidence in the light most favorable to the circuit court’s

judgment. Id. at 200.

 Analysis

 The Act defines “abuse” as “the occurrence of any of the following acts, attempts or

threats against a person who may be protected pursuant to this chapter,” including assault,

battery, coercion, harassment, sexual assault, and unlawful imprisonment. Section 455.010(1).

“Harassment” is “engaging in a purposeful or knowing course of conduct involving more than

one incident that alarms or causes distress to an adult or child and serves no legitimate purpose.

The course of conduct must be such as would cause a reasonable adult or child to suffer

substantial emotional distress and must actually cause substantial emotional distress to the

petitioner or child.” Section 455.010(1)(d). The phrase “substantial emotional distress” means

“the offending conduct must produce a considerable or significant amount of emotional distress

in a reasonable person; something markedly greater than the level of uneasiness, nervousness,

unhappiness or the like which are commonly experienced in day to day living.” Burke v. DeLay,

583 S.W.3d 97, 100 (Mo. App. S.D. 2019) (quoting Wallace v. Van Pelt, 969 S.W.2d 380, 384

(Mo. App. W.D. 1998)). Harassment has been found where there was physical contact and an

offer to fight, and where there was evidence of drunken outbursts, pushing, and repeated

communications despite official requests to discontinue communication. Lawyer v. Fino, 459

S.W.3d 528, 532 (Mo. App. S.D. 2015). However, repeated communication alone “typically

does not rise to the level of harassment because, while annoying and boorish, such conduct

would not cause substantial emotional distress in a reasonable person.” Id.

 There is no harassment when the course of conduct serves a legitimate purpose. See

Section 455.010(1)(d). “For conduct to have ‘no legitimate purpose,’ it must be found to be not

 4
sanctioned by law or custom, to be unlawful, or not allowed.” Fino, 459 S.W.3d at 533 (quoting

Dennis v. Henley, 314 S.W.3d 786, 789 (Mo. App. S.D. 2010)). “Missouri’s appellate courts

have repeatedly found that repeated communications regarding the care of children between

estranged parents are appropriate.” Id. (emphasis added).

 Defendant seems to assert that his conduct served a legitimate purpose because he was an

“estranged parent.” Clark v. Wuebbeling, 217 S.W.3d 352, 355 (Mo. App. E.D. 2007)

(“Communication by one parent to another regarding the care of a child is sanctioned, and even

encouraged, by law and is accordingly an activity with a legitimate purpose.”). However, we

find this argument disingenuous because he is not the child’s father. Moreover, it is utterly

unreasonable for Defendant to attempt to justify his course of conduct based upon his belief that

he has some right of access to Victim’s child. Defendant is not an estranged parent having

difficulty communicating with the other parent about their shared child. Instead, he is merely an

ex-partner using Victim’s child as a weapon to intimidate her, including baseless allegations of

child abuse. We find Defendant’s course of conduct does not remotely serve a “legitimate

purpose,” to justify his decision to repeatedly disregard Victim’s request to stop contacting her.

 Victim testified that she became scared of Defendant when he ignored her nineteen

requests to stop contacting her and showed up at her house because “he doesn’t believe that he’s

crossing boundaries, and I’ve asked him to stop contacting me, and he’s pushing it further and

further.” Defendant’s course of conduct, which was escalating from obsessive, repeated

communications to inappropriate contact with Victim’s child in her own yard and confronting

Victim in person, claiming she was abusing her daughter, is such that it would produce

substantial emotional distress in any reasonable person.

 5
 Defendant “engag[ed] in a purposeful or knowing course of conduct involving more than

one incident that alarms or causes distress to an adult or child and serves no legitimate purpose,”

by failing to heed Victim’s requests to stop contacting her and showing up to her home and

accusing her of child abuse. The Act is intended to protect victims from this exact type of

alarming conduct. See L.M.M. v. J.L.G., 619 S.W.3d 593, 597 (Mo. App. E.D. 2021) (“The

Adult Abuse Act is intended to prevent potential violence. . .”); see also Van Pelt, 969 S.W.2d at

387 (“The [Act’s] laudatory purpose is to prevent potential violence, and unnecessary and

unjustified infliction of emotional distress.”). Thus, the trial court did not err in granting Victim

an order of protection against Defendant because there was sufficient evidence of abuse by

harassment. Defendant’s point is denied.

 CONCLUSION

 The trial court’s judgment is affirmed.

 __________________________________
 Lisa P. Page, Judge

Sherri B. Sullivan, P.J. and Thomas C. Clark, II, J., concur.

 6