Timothy FOWLER, Petitioner/Respondent,

v.

Jerry MINEHART, Respondent/Appellant.

No. SD 32644.

Missouri Court of Appeals, Southern District.

Nov. 6, 2013.

Timothy Lynn Fowler, Petitioner/Respondent, pro se.

Devin S. Kirby, Doniphan, MO, for Respondent/Appellant.

WILLIAM W. FRANCIS, JR., Chief Judge.

Jerry Minehart ("Minehart") appeals from an "Order/Judgment" granting Timothy Fowler ("Fowler")[1] a "Full Order of Protection" against Minehart, pursuant to the Adult Abuse Act, after a bench trial. Minehart contends Fowler failed to prove all the elements of "stalking" as defined in sections 455.010–.090[2] to support the trial court's issuance of a Full Order of Protection. We agree and reverse.

### Factual Procedural Background

Fowler filed an "Adult Abuse/Stalking Petition for Order of Protection" ("Petition") on January 22, 2013, against Minehart. Fowler worked with Minehart's wife at the Dexter School District,[3] and prior to the incident giving rise to the Petition, Fowler made a disciplinary complaint against Minehart's wife.

In his pre-printed Petition, Fowler selected the pre-printed options in boxes that alleged Minehart was "Stalking" and defined the relationship as "employees'

---

1. Fowler did not submit a brief on appeal. While there is no penalty for that omission, this Court is then forced to adjudicate Minehart's claims of error without the benefit of whatever arguments Fowler might have raised. *McClain v. Kelley,* 247 S.W.3d 19, 23 n. 4 (Mo.App.S.D.2008).

2. All references to statutes are to RSMo 2000, unless otherwise indicated.

3. Fowler is the assistant to the head mechanic at the bus garage; Minehart's wife is a bus driver.

[sic] spouse." He alleged the act occurred at the school campus, and marked the pre-printed boxes alleging that Minehart "knowingly and intentionally" "harassed [Fowler]" and "placed or attempted to place [Fowler] in apprehension of immediate physical harm[.]" However, Fowler did not check the box for the option to allege Minehart had "stalked" him. Fowler detailed the acts of "harassment" in his Petition by alleging he received a threatening phone call from Minehart on January 22, 2013, about his wife's job.

A hearing was held February 25, 2013, with respect to Fowler's Petition. The trial court had all parties and witnesses sworn in at the same time, and then the trial court proceeded to conduct the examination of witnesses, starting with Fowler.

Fowler told the trial court he sought the order of protection after he had a disciplinary action with Minehart's wife, which resulted in Mrs. Minehart meeting with administration. However, Mrs. Minehart was not fired, and at the time of trial, was still working for the Dexter School District and Fowler was still her assistant supervisor. After Mrs. Minehart informed her husband of the incident, Fowler received a phone call from Minehart in which Minehart told Fowler, "I'm going to come get you. I'm going to get even with you. I'll catch you off school campus and I'll take care of you." Fowler testified Minehart did not threaten his life, but he felt Minehart was threatening bodily harm. Fowler reported the phone call to the local police department and Officer Kevin Moore ("Officer Moore") came to the Dexter School District to make a report.

The trial court conducted an examination of Officer Moore. Officer Moore testified he and Fowler were in the Dexter School District office when Minehart arrived at the school cafeteria to discuss his wife's employment with her supervisor, Larry McKay ("McKay").[4] Officer Moore saw Minehart in the school cafeteria, which was located outside of the office, and asked Fowler if he would like to speak with Minehart or wanted Minehart to leave. Fowler told Officer Moore that he would like to speak with Minehart, but wanted Officer Moore present during the conversation. Officer Moore testified Fowler and Minehart then had a "heated conversation," during which Minehart said, "[y]ou wait till you leave the school property" and pointed his finger at Fowler. Officer Moore then told Minehart that he needed to stop and leave—Minehart left.

The trial court then asked Officer Moore:

> [Trial Court:] Based upon your experience in investigating matters such as these, do you believe that there was any reasonable basis at all for [Fowler] to consider any of the actions or statements of [Minehart] to be threats of physical violence?
>
> [Officer Moore:] Yes, sir.

The trial court next addressed Minehart, and told him he would give Minehart a chance to "inquire or testify if you wish to do so[,]" but first noted the "testimony could form the basis of sufficient information to—for criminal charges to be brought." The trial court went on to inform Minehart that anything he said on the record could be used "for any lawful purpose by the prosecuting attorney or anyone else if such charges are brought." The trial court also informed Minehart he could "consent to the order being entered"

---

4. The trial court also examined McKay about the incident. The trial court's questioning of McKay lasted slightly over one minute.

without agreeing he did any of the things Fowler alleged.

Minehart did not want to consent to the order being entered, and the trial court proceeded to examine Minehart. First, the trial court stated:

> [Trial Court:] ... So essentially, you're telling me you want to testify and you want to tell me, first, that these people are lying?
>
> [Minehart:] No sir. I'd like to tell you what I said.

At the conclusion of the hearing, the trial court issued its Order/Judgment entering a Full Order of Protection against Minehart. The Full Order of Protection noted Minehart's relationship to Fowler as specified on the Petition was "CO WORK-ER'S SPOUSE." This appeal followed.

Minehart contends the trial court erred in issuing the Full Order of Protection because Fowler "failed to prove the essential elements of 'stalking' ... in that there was no evidence that [Minehart] initiated 'repeated' contact with [Fowler]." The sole issue for our determination is whether there was sufficient evidence to support the trial court's Order/Judgment entering the Full Order of Protection against Minehart.

### Standard of Review

■ This Court has acknowledged, on more than one occasion, the harm that can result in abusing the Adult Abuse Act and its provisions, including the stigma that may attach to an individual labeled a "stalker."[5] *See Leaverton v. Lasica,* 101 S.W.3d 908, 912 (Mo.App.S.D.2003); *Dennis v. Henley,* 314 S.W.3d 786, 790 (Mo. App.S.D.2010); *Skovira v. Talley,* 369 S.W.3d 780, 781 (Mo.App.S.D.2012); *Patterson v. Pilot,* 399 S.W.3d 889, 897 (Mo. App.S.D.2013). Due to this "real harm[,] ... trial courts must exercise great care to ensure that sufficient evidence exists to support all elements of the statute before entering a full order of protection." *Skovira,* 369 S.W.3d at 781 (internal quotations and citations omitted).

■ Our review of a court-tried case is governed by *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). *Schwalm v. Schwalm,* 217 S.W.3d 335, 336 (Mo.App. E.D.2007). We will uphold the trial court's judgment as long as it is supported by substantial evidence, it is not against the weight of the evidence, and it does not erroneously declare or apply the law. *Id.* "Substantial evidence has been defined as competent evidence from which the trier of fact could reasonably decide the case." *Towell v. Steger,* 154 S.W.3d 471, 474 (Mo. App.S.D.2005). In reviewing the trial court's judgment, we view all facts and inferences in a light most favorable to the judgment and defer to the trial court's determination of credibility. *Id.; Binggeli v. Hammond,* 300 S.W.3d 621, 623 (Mo. App.W.D.2010).

---

5. In *Towell v. Steger,* 154 S.W.3d 471, 475 (Mo.App.S.D.2005), additional consequences to orders of protection were noted:

> We are mindful that although the Adult Abuse Act does not itself impose criminal penalties, there are serious consequences to orders of protection being entered. Under the Federal Gun Control Act, 18 U.S.C. 922(g)(8), a person under an order of protection may not possess a firearm, even for recreational purposes. Therefore, Appellant may violate federal laws if he possesses hunting weapons or legitimately hunts. The mere possession of firearms while under an order of protection violates 18 U.S.C. 922(g)(8). *U.S. v. Lippman,* 369 F.3d 1039 (8th Cir.2004). The penalty provisions do not require knowledge of the law nor intent to violate it. *Id.* at 1043. Another consequence to the entry of an order of protection is that persons in the military or law enforcement, who become subject to an order of protection, may lose their livelihood.

## Analysis

■ The Adult Abuse Act was not intended to be "a solution for minor arguments between adults." *Binggeli,* 300 S.W.3d at 624. Rather, section 455.020.0, RSMo Cum.Supp. (2013), provides relief for: (1) any person who has been subject to domestic violence by a present or former family or household member, or (2) any person who has been the victim of stalking. Since Fowler and Minehart do not meet the various definitions of "family" or "household member" [6] found in section 455.010(7),[7] Fowler could only seek an order of protection based on the "stalking" provision of the act,[8] and to obtain a full order of protection, Fowler had to prove the stalking allegation by a preponderance of the evidence.[9] § 455.040.1, RSMo Cum. Supp. (2013).

"Stalking" is defined in section 455.010(13) as

when any person purposely and repeatedly engages in an unwanted course of conduct that causes alarm to another person when it is reasonable in that person's situation to have been alarmed by the conduct. As used in this subdivision:

(a) "Alarm" means to cause fear of danger of physical harm;

(b) "Course of conduct" means a pattern of conduct composed of repeated acts over a period of time, however short, that serves no legitimate purpose. Such conduct may include, but is not limited to, following the other person or unwanted communication or unwanted contact; and

(c) "Repeated" means two or more incidents evidencing a continuity of purpose. § 455.010(13).

Prior courts have warned of the potential for adults to abuse the stalking provision of the Adult Abuse Act:

The potential for abuse of the stalking provision of the Adult Abuse Act is great. And, the harm that can result is both real and significant, not the least of which will be the stigma that attaches by virtue of a person having been found to be a stalker. Moreover, such a finding could lead to criminal prosecution for violation of the criminal stalking statute, § 565.225. Thus, it is incumbent that the

---

**6.** "Family" or "household member" is defined as "spouses, former spouses, any person related by blood or marriage, persons who are presently residing together or have resided together in the past, any person who is or has been in a continuing social relationship of a romantic or intimate nature with the victim, and anyone who has a child in common regardless of whether they have been married or have resided together at any time." § 455.010(7), RSMo Cum.Supp. (2013).

**7.** Hereinafter, when referring to section 455.010, we refer to RSMo Cum.Supp. (2013).

**8.** In his pre-printed Petition, Fowler selected the pre-printed options in the box that alleged Minehart was "Stalking" and defined the relationship as "employees' [sic] spouse." In addition, the trial court's Full Order of Protection noted Minehart's relationship to Fowler as specified on the Petition was "CO WORKER'S SPOUSE" and not a present or former family or household member.

**9.** Fowler's Petition also alleged Minehart "harassed [him]." However, "[c]onduct that meets the definition of ... 'harassment,' as [that] term [is] defined in section[ ] 455.010(1)[ ] and (d) ... is a form of abuse." *H.K.R. v. Stemmons,* 295 S.W.3d 220, 223 (Mo.App.W.D.2009). Abuse, as it relates to the Adult Abuse Act, relates to domestic violence by a present or former family or household member. *See* § 455.010(5) and § 455.020.1, RSMo Cum.Supp. (2013). There was no evidence that Fowler and Minehart were related, lived together, or had a personal relationship. Therefore, the trial court could not enter a protection order on the basis of abuse or harassment.

**922**

trial courts exercise great vigilance to prevent abuse of the stalking provisions in the Adult Abuse Act and in making sure that sufficient credible evidence exists to support all elements of the statute before entering a protective order. *Wallace v. Van Pelt,* 969 S.W.2d 380, 387 (Mo.App.W.D.1998).

Here, we find Fowler failed to produce any evidence of the statutorily-required "repeated" "course of conduct" by Minehart. In order for Fowler to prove he was entitled to a full order of protection based on stalking, he had to present substantial evidence that Minehart: (1) purposely and *repeatedly;* (2) engaged in an *unwanted* course of conduct; (3) that caused alarm to Fowler; and (4) it was reasonable for Fowler to have been alarmed by the conduct. § 455.010(13). The two elements Fowler failed to prove by substantial evidence are "repeatedly" and "unwanted course of conduct." "Repeated" is defined to require two or more incidents evidencing a continuity of purpose; "course of conduct" must include "repeated acts over a period of time, however short, that serves no legitimate purpose" and can include "unwanted communication or unwanted contact[.]" § 455.010(13)(b) and (c).

In a light most favorable to the trial court's Order/Judgment, the record at trial does not establish that Minehart *repeatedly* engaged in an *unwanted* course of conduct. The Petition and evidence at trial indicate the incident on January 22, 2013, was the only incident that could have possibly caused Fowler to be alarmed. The events on January 22, 2013, involved one

telephone conversation and a "heated conversation" at the school the same day as the telephone conversation. While there were arguably two events on one day, Minehart only prompted one incident—the telephone call. The undisputed testimony [10] indicates the "heated conversation" was *initiated by Fowler.* In fact, Officer Moore testified Fowler *wanted* to speak with Minehart when Minehart came to the school; Fowler simply requested Officer Moore stay during the conversation:

> [Trial Court:] Describe it to me how it happened and who said what.
>
> [Officer Moore:] While speaking with [Fowler] in his office, [Minehart] came into like—like the cafeteria section there of the building. He wasn't inside the office. I asked [Fowler] if he wanted me to stay, if he wanted to speak to [Minehart] or if he wanted [Minehart] to leave. He said he would like to speak with him, just wanted me to stay there while he did.

We find no evidence or testimony in the record disputing this testimony by Officer Moore that Fowler wanted to speak with Minehart.[11] In light of the testimony that Fowler wanted to speak with Minehart, the conversation could not qualify as an "unwanted communication" or "unwanted contact" by Minehart.

 There was no testimony or evidence of other incidents or "unwanted course of conduct" by Minehart towards Fowler before or after January 22, 2013.[12] "[O]ne event alone is insufficient to prove stalking because of the absence of repeated acts over a period of time." *Den-*

10. The only testimony about *why* Minehart went to the school came from Minehart himself. He testified "the only reason [he] went to the school, because I was going to talk to [McKay]" after Fowler "said he didn't know nothing about what was going on."

11. After Officer Moore testified, the trial court specifically asked Fowler if there was any-

thing Fowler wanted to tell the trial court and Fowler responded, "No, sir. I think that pretty much covers it."

12. The only transcript before this Court is that of the trial on Fowler's request for a full order of protection held on February 25, 2013. At this trial, the trial court conducted all examination of the parties' witnesses. The

*nis*, 314 S.W.3d at 790. Therefore, the one phone call that occurred on January 22, 2013, was insufficient to support the issuance of the Full Order of Protection against Minehart for stalking. *See H.K.R. v. Stemmons,* 295 S.W.3d 220, 224 (Mo. App.W.D.2009); *Overstreet v. Kixmiller,* 120 S.W.3d 257, 259 (Mo.App.E.D.2003) (one personal conversation and a statement in an office memo is not sufficient evidence to meet the definition of stalking). Because Fowler failed to adduce evidence that Minehart repeatedly engaged in an unwanted course of conduct, no allegation of stalking could have been sustained, and the trial court misapplied the law in entering the Full Order of Protection against Minehart.

Therefore, the Order/Judgment is reversed and the cause is remanded to the trial court with instructions to vacate the Full Order of Protection.

NANCY STEFFEN RAHMEYER, P.J. and DANIEL E. SCOTT, J., Concurs.

trial court examined four witnesses over approximately 17 minutes. Approximately 18 minutes after opening the case on the day of trial, the trial court granted Fowler the Full Order of Protection.