Gary D. Witt, Judge
D.W.D. appeals the entry of a full order of protection under the Missouri Adult Abuse Act (455.005 et. seq.[1] ) entered against him in favor of L.M.D. For the reasons explained below, we reverse.[2]
*474 Factual Background[3]
In 1996, D.W.D. entered an Alford plea to a felony charge of statutory rape involving L.M.D.'s daughter. Since that time until around June 6, 2017, the parties had no contact. On or around June 6, 2017, L.M.D. became lost and turned around in D.W.D.'s driveway, at which time D.W.D. flipped her off. On June 8, 2017, L.M.D. was at a local restaurant with a friend. D.W.D. entered the restaurant with his minor son and approached L.M.D. D.W.D. told her to never pull into his driveway again and L.M.D. told him never to flip her off again. D.W.D. responded not to worry because next time he would blow her head off.
On June 9, 2017, L.M.D. filed a petition for an ex parte order of protection in Vernon County Circuit Court under section 455.020, which was granted. A hearing regarding a Full Order of Protection was held on June 16, 2017. On June 19, 2017, the trial court granted L.M.D. a full order of protection against D.W.D. This appeal followed.
Standard of Review
"The appellate court will sustain the trial court's order unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the laws." Wallace v. Van Pelt , 969 S.W.2d 380, 382 (Mo. App. W.D. 1998). This court gives deference to the circuit court's findings of credibility, and only considers those facts and reasonable inferences therefrom supporting the decision. Id. at 383. "Because the trial judge is in the best position to gauge the credibility of the witnesses, in cases under the Adult Abuse Act, the discretion of the trial court should not often be superseded." Id.
C.L. v. Hartl , 495 S.W.3d 241, 243 (Mo. App. W.D. 2016).
Analysis
D.W.D. raises one point on appeal. In his sole point on appeal, D.W.D. argues that the trial court erred in issuing a full order of protection in favor of L.M.D. because L.M.D. failed to prove that she was stalked as defined under section 455.010(14). D.W.D. argues that L.M.D. provided no evidence that D.W.D. engaged in an unwanted course of conduct because D.W.D. only initiated one unwanted contact with L.M.D., which is insufficient to establish a course of conduct as defined under section 455.010(14)(b).
"Any adult who has been subject to domestic violence by a present or former adult family or household member, or who has been the victim of stalking, may seek relief under section 455.010 to 455.085 by filing a verified petition alleging such domestic violence, stalking, or sexual assault by the respondent." Section 455.020. "As such, a full adult protection order may be entered only upon proof that the petitioner was: (1) subjected to abuse by a present or former adult family or household member or (2) subjected to stalking." H.K.R. v. Stemmons , 295 S.W.3d 220, 223 (Mo. App. W.D. 2009).
Because there is real harm that can result in abusing the Adult Abuse Act and its provisions, including the stigma that may attach to a respondent who is ultimately labeled a 'stalker,' trial courts must exercise great care to ensure that sufficient evidence exists to support all elements of the statute before entering a full order of protection.
*475 McGrath v. Bowen , 192 S.W.3d 515, 517 (Mo. App. W.D. 2006) (citing Overstreet v. Kixmiller , 120 S.W.3d 257, 258 (Mo. App. E.D. 2003) ).
In the case at bar, both parties agree that D.W.D. was not a present or former adult family or household member as defined in section 455.010(7).[4] Therefore, in order to receive a full order of protection under section 455.020, L.M.D. had to prove that she was stalked by D.W.D. as defined under section 455.010(14). See H.K.R. , 295 S.W.3d at 223. L.M.D. failed to meet this burden.
Section 455.010(14) defines "stalking" as:
when any person purposely engages in an unwanted course of conduct that causes alarm to another person, or a person who resides together in the same household with the person seeking the order of protection when it is reasonable in that person's situation to have been alarmed by the conduct. As used in this subdivision:
(a) "Alarm" means to cause fear or danger of physical harm.
(b) "Course of conduct" means a pattern of conduct composed of two or more acts over a period of time, however short, that serves no legitimate purpose. Such conduct may include, but is not limited to, following the other person or unwanted communication or unwanted contact.
Section 455.010(14)(a)-(b). "This Act is not, nor was it intended to be, 'a solution for minor arguments between adults.' " Dennis v. Henley , 314 S.W.3d 786, 790 (Mo App. S.D. 2010) (citing Binggeli v. Hammond , 300 S.W.3d 621, 624 (Mo. App. W.D. 2010) ).
The record at trial does not establish that D.W.D. engaged in a course of conduct because D.W.D. initiated contact on only one occasion. The initial contact between the parties giving rise to this action was on June 6, 2017-when D.W.D. flipped off L.M.D. in his driveway, was initiated by L.M.D.-as she was the one to pull into the driveway of his home. L.M.D. testified regarding the driveway incident, "I couldn't see that far away because it's way [sic] far away. It could have been him, it could have been someone else, but it was as tall as him. It could have been him." Even if it was in fact D.W.D. who extended his middle finger to her in the driveway, one incident of extending one's middle finger at another person who is turning around in a driveway from a distance where the person is difficult to even recognize does not qualify as an act which should reasonably cause alarm to another person. Further, because this interaction was initiated by L.M.D. by going onto D.W.D.'s property and the very limited nature of the interaction it does not qualify as part of an 'unwanted course of conduct'. See Fowler v. Minehart , 412 S.W.3d 917, 922-23 (Mo. App. S.D. 2013) (holding that because a heated conversation was initiated by the petitioner of the protective order, "the conversation could not qualify as an 'unwanted communication' or 'unwanted contact.' "); M.S. v. N.M. , 485 S.W.3d 792, 795 (Mo. App. E.D. 2016).
This leaves the incident in the local restaurant as the only instance of an unwanted *476 contact by D.W.D. "[O]ne event alone is insufficient to prove stalking because of the absence of repeated acts over a period of time." Dennis , 314 S.W.3d at 790. While the actions of D.W.D. toward L.M.D. at the restaurant are reprehensible, this one act fails to meet the requirements of the Adult Abuse Act. Therefore, one confrontation at the local restaurant is insufficient to support the issuance of a full order of protection against D.W.D. for stalking. See Fowler , 412 S.W.3d at 922-23 ; H.K.R. , 295 S.W.3d at 224 ; Overstreet , 120 S.W.3d at 259. Since L.M.D. failed to meet her burden of proof that D.W.D. repeatedly engaged in an unwanted course of conduct, no allegation of stalking could have been sustained on this record. D.W.D.'s point on appeal is granted.
Conclusion
The Order by the trial court is reversed and the full order of protection is vacated and the cause is dismissed.
All concur

All statutory citations are to RSMo 2000, as update through the 2017 Cumulative Supplement, unless otherwise indicated.

Both parties to this action are pro se. At the time of the actions giving rise to this trial, D.W.D. was licensed to practice law but he was subsequently suspended indefinitely by the Missouri Supreme Court for actions unrelated to this case.

We review the facts in the light most favorable to the trial court's judgment. In the Interest of B.J.H. , 356 S.W.3d 816, 820 n. 1 (Mo. App. W.D. 2012) (citation omitted)

Section 455.010(7) defines "family" or "household member" as:
[S]pouses, former spouses, any person related by blood or marriage, persons who are presently residing together or have resided together in the past, any person who is or has been in a continuing social relationship of a romantic or intimate nature with the victim, and anyone who has a child in common regardless of whether they have been married or have resided together at any time[.]