

# In the
# Missouri Court of Appeals
# Western District

R.J.D.,                                    )
                                           )
                  Respondent,              )    WD83817
                                           )
v.                                         )    OPINION FILED:  April 6, 2021
                                           )
ROBERT W. GAUERT,                          )
                                           )
                  Appellant.               )

**Appeal from the Circuit Court of Callaway County, Missouri**
The Honorable J. Hasbrouck Jacobs, Judge

Before Division Three:  Karen King Mitchell, Presiding Judge, Gary D. Witt, Judge and
Anthony Rex Gabbert, Judge

Robert Gauert ("Gauert") appeals from the judgment of the Circuit Court of

Callaway County entering a full order of protection in favor of R.J.D.[1]  We reverse and

vacate the judgment.

---

[1] Pursuant to section 595.226 RSMo (2016), we refer to the victim, the victim's wife, and the victim's hired hand by their initials because the circuit court found all three were victims of stalking.  In addition to the Petition for an Order of Protection that R.J.D. filed against Gauert that is at issue in the appeal before us, Gauert filed a Petition for an Order of Protection against R.J.D.  Gauert's Petition against R.J.D. was denied and that ruling has not been appealed.  In addition, L.D, R.J.D.'s wife, and G.G., R.J.D.'s and L.D.'s hired hand, also filed separate Petitions for Orders of Protection against Gauert, which were granted, and the grant of relief to L.D. and G.G. have been separately appealed in case numbers WD83816 and WD83815.  Further, due to the interrelated facts, all of these matters were tried together, but the cases were not consolidated.  Facts that were adduced at the trial but are unrelated to R.J.D.'s claims against Gauert are omitted from this opinion so as not to confuse the issues relevant to this appeal with unrelated issues of the other causes of action.

## Factual and Procedural Background[2]

R.J.D. is married to L.D., and they purchased their farm in 2008. Because their farm was landlocked, they obtained an easement across property owned by a third party, the "Saddle Club." R.J.D.'s and L.D.'s property adjoins Gauert's farm, and there has been a longstanding dispute between R.J.D. and L.D. and Gauert, which started over Gauert's use of R.J.D.'s and L.D.'s easement across the Saddle Club property. The easement is located next to the Gauert's property line.

In May of 2011, Gauert called L.D. a "bitch" and a "whore" when retrieving her mail. As R.J.D. was driving home, he saw the encounter and approached Gauert, who was sitting in his truck with the window down. R.J.D. told Gauert not to talk to L.D. that way, and Gauert opened the door, stood up, and confronted R.J.D. L.D. pulled R.J.D. away from Gauert. No physical confrontation ensued.

Gauert and R.J.D. and L.D. had another argument later in 2011 regarding Gauert's use of the easement across the Saddle Club's property. The Saddle Club and R.J.D. agreed to install a fence along the easement to prohibit Gauert from using the easement to enter his property. While R.J.D. was installing the fence, Gauert cursed at R.J.D. and argued that the fence could not be installed in that location because it was on Gauert's property. Gauert called the Callaway County Sheriff's Department, and Deputy Alan Lebel ("Deputy Lebel") was dispatched. Deputy Lebel determined that the R.J.D. was installing the fence on property where he had the right to do so and that Gauert did not

[2] When reviewing a court-tried case, we view the facts and reasonable inferences in a light most favorable to the judgment. *Hanger v. Dawson*, 584 S.W.3d 798, 800 (Mo. App. W.D. 2019).

have a right to interfere. Gauert got in his vehicle, drove over R.J.D.'s and L.D.'s trash can, and went to his house. R.J.D. and L.D. were standing approximately twenty feet away from the trash can at the time. R.J.D. requested that Gauert be arrested for property damage, and Deputy Lebel took Gauert into custody.

On June 29, 2019, Gauert had a bonfire on his own property. As R.J.D. and L.D. were leaving for dinner at approximately 9:00 p.m., they saw the bonfire and could not tell whether it was on their property or another neighbor's property. R.J.D. and L.D. used an ATV to investigate and reported the fire to the local fire department. After determining the fire was not on their property, they went across Gauert's property on the ATV to investigate if the fire was on another neighbor's property. While they were on Gauert's property, Gauert drove his truck toward R.J.D. and L.D. to chase them off of his property coming within three feet of their ATV. Gauert stopped his vehicle at the edge of his property and did not pursue R.J.D. and L.D. once they were off of his property. R.J.D. and L.D. contacted the Callaway County Sheriff's Department to report the alleged assault. The local fire department did not engage in any firefighting activity and did not issue any citations to Gauert, but the fire department asked Gauert to report any future fires on his property so the department would know how to respond to calls.

On July 22, 2019, R.J.D. was working along the fence line trimming trees, and Gauert taunted R.J.D. R.J.D. testified that, "[T]he main thrust of the whole conversation was that I was a coward and that I needed to figure out how to defend myself and my wife." L.D. was behind some trees and recorded the encounter on a cell phone.

3

On August 14, 2019, R.J.D. was working near the entrance to his property. L.D. and G.G., R.J.D.'s and L.D.'s hired hand, were bathing a horse in a nearby pasture. G.G. had her dog with her, which was off-leash and wandered onto Gauert's property. R.J.D. heard a gunshot from a small caliber firearm, but he did not think anything of it because it is not unusual to hear gunshots in the rural area where they live. Shortly thereafter, G.G. noticed her dog was missing, and R.J.D. walked through the field toward Gauert's property and saw G.G.'s dog lying dead on Gauert's property. Gauert took a picture of the scene and told L.D. and G.G. that the dog had been shot.

Immediately, R.J.D. and L.D. and G.G. went to the property line and telephoned the Callaway County Sheriff's Department. While waiting for law enforcement to arrive, Gauert moved the dog's body away from the middle of his yard so it was closer to his porch and removed the dog's collar. Gauert testified G.G.'s dog was being aggressive toward Gauert's cats, and Gauert retrieved a .22 caliber rifle. Gauert testified that after he returned with the rifle, G.G.'s dog showed his teeth to Gauert, and Gauert shot the dog for his own protection. Gauert offered to allow R.J.D. or L.D. or G.G. to come onto his property and retrieve the dog's body, but R.J.D. refused to enter the property and instructed L.D. and G.G. to stay on R.J.D.'s and L.D.'s property. R.J.D. and L.D. and G.G. waited at the property line waiting for law enforcement to arrive. R.J.D. testified that he felt threatened during the encounter "[b]ecause we caught him killing a dog. We knew he had a gun. He was extremely upset that we called the sheriff."

Two weeks later on September 4, 2019, R.J.D. filed a petition seeking an order of protection based on an allegation of stalking. The circuit court conducted a bench trial on

4

January 23, 2020, and entered its judgment granting R.J.D. a full order of protection against Gauert ("Judgment") on that date. The Judgment prohibited Gauert from coming within fifty feet of R.J.D.; communicating with R.J.D. in any fashion; harassing, stalking, or threatening R.J.D.; and using, attempting to use, or threatening to use physical force against R.J.D. The Judgment further ordered Gauert not to possess firearms while the Judgment is in effect. The circuit court also found that it was in the parties' best interests that the Judgment automatically renew after one year; thus, the Judgment is effective until January 22, 2022. After various post-trial motions were filed, heard, and ruled on, the Judgment became final on May 20, 2020. This timely appeal followed.[3]

## Discussion

Gauert raises two claims of error. First, he asserts that the circuit court erred in granting the Judgment because the record lacks substantial evidence in that R.J.D. failed to prove all of the elements required to establish stalking under the Adult Abuse Act ("Act").[4] Second, he argues the circuit court erred in ordering that Gauert may not possess firearms because the circuit court exceeded its jurisdiction in that the Act does not provide for a remedy of prohibiting the possession of firearms except when the parties are "intimate partners". Because Gauert's first point on appeal is dispositive, we do not address his second point.

---

[3] R.J.D. did not file a brief or participate in this appeal in any fashion.
[4] Section 455.005, *et seq.* All statutory references are to the Revised Statutes of Missouri 2016 as currently supplemented, unless otherwise indicated.

5

**Standard of Review**

We review orders of protection under the Act "the same as in any other court-tried case; we will uphold the trial court's judgment as long as it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law." *M.N.M. v. S.R.B.*, 499 S.W.3d 383, 384 (Mo. App. E.D. 2016). "Substantial evidence is evidence that, if believed, has some probative force on each fact that is necessary to sustain the circuit court's judgment." *Ivie v. Smith*, 439 S.W.3d 189, 199 (Mo. banc 2014). We defer to the circuit court's credibility determinations and consider the evidence in the light most favorable to the circuit court's judgment. *Id*. at 200.

**Analysis**

The Act provides that a person who has been subject to domestic violence or has been the victim of stalking or sexual assault may seek an order of protection. Section 455.020.1. Because it is undisputed that R.J.D. and Gauert are not related and are not members of the same household as defined by the Act, the Judgment could only be entered if R.J.D. sufficiently demonstrated he was a victim of stalking by Gauert.

The Act defines "[s]talking" as "when any person purposely engages in an unwanted course of conduct that causes alarm to another person . . . when it is reasonable in that person's situation to have been alarmed by the conduct." Section 455.010(14). "'Course of conduct'" means a pattern of conduct composed of two or more acts over a period of time, however short, that serves no legitimate purpose." Section 455.010(14)(b). "'Alarm' means to cause fear of danger of physical harm[.]" Section

6

455.010(14)(a). Therefore, to obtain relief under the Act a petitioner must demonstrate by a preponderance of the evidence: (1) that the respondent engaged in a pattern of conduct of at least two or more acts, (2) which served no legitimate purpose, (3) causing the petitioner to fear danger of physical harm, and (4) that the petitioner's fear was reasonable. *Binggeli v. Hammond*, 300 S.W.3d 621, 624 (Mo. App. W.D. 2010) (applying section 455.010(10)(a)-(c) RSMo 2000).[5]

"[T]he stalking provision of the [Act] was not meant to be a panacea for the minor arguments that frequently occur between neighbors." *N.L.P. v. C.G.W.*, 415 S.W.3d 800, 804 (Mo. App. E.D. 2013) (quoting *C.H. v. Wolfe*, 302 S.W.3d 702, 707 (Mo. App. W.D. 2009)).

> The potential for abuse of the stalking provision of the [Act] is great. And, the harm that can result is both real and significant, not the least of which will be the stigma that attaches by virtue of a person having found to be a stalker. Moreover, such a finding could lead to criminal prosecution for violation of the criminal stalking statute, [section] 565.225. Thus, it is incumbent that trial courts exercise great vigilance to prevent abuse of the stalking provisions in the [Act] and in making sure that sufficient credible evidence exists to support all elements of the statute before entering a protective order.

*Wallace v. Van Pelt*, 969 S.W.2d 380, 387 (Mo. App. W.D. 1998).

R.J.D. alleged that Gauert engaged in the following acts:[6] (1) calling L.D. vulgar names near the mailbox and threatening to fight R.J.D., (2) driving over R.J.D.'s and L.D.'s trash can, (3) threatening and taunting R.J.D. at the fence line, (4) following R.J.D.

---

[5] Since *Binggeli* was decided, section 455.010 has been amended several times, but the definitions of "stalking," "course of conduct," and "alarm" are substantially the same and are now contained within section 455.010(14)(a)-(c) RSMo. (2016).

[6] The Judgment did not make any findings of fact pertaining to any of the alleged acts, and the Judgment did not specify which events formed the pattern of conduct necessary to enter a full order of protection.

and L.D. after the fire on Gauert's property, and (5) shooting G.G.'s dog. We address the sufficiency of these incidents to determine if they satisfy the four elements necessary to warrant the entry of full order of protection.

**R.J.D. failed to establish that Gauert committed some of the alleged acts.**

R.J.D. asserted in his petition and in his testimony that Gauert committed other acts, but acknowledged he was merely speculating. Therefore, this testimony is too vague and indefinite to support a conclusion that Gauert engaged in that alleged conduct; thus, we cannot consider those events as part of Gauert's "pattern of conduct."

**Following R.J.D. and L.D. while they were on Gauert's property served a legitimate purpose.**

"An activity with a legitimate purpose is one that is sanctioned by law or custom or is lawful or is allowed." *C.B. v. Buchheit*, 254 S.W.3d 210, 212 (Mo. App. E.D. 2008) (citing *Overstreet v. Kixmiller*, 120 S.W.3d 257, 258 (Mo. App. E.D. 2003)). In Missouri, trespass "is the unauthorized entry by a person upon another's land, regardless of the degree of force used, and regardless of any damage done." *Philips v. Citimortgage, Inc.*, 430 S.W.3d 324, 330 (Mo. App. E.D. 2014). Landowners may protect their property and use force to prevent stealing, property damage, or tampering. Section 563.041.1. *See Hartman v. Hoernle*, 201 S.W. 911, 912 (Mo. App. 1918) ("there can be no doubt that while defendant was entitled to resist the trespass upon his land[,] . . . he was not warranted in using more force than was necessary to eject the trespassers or to protect his property . . . ."). In the instant case, R.J.D. and L.D. unlawfully entered Gauert's property on an ATV, and Gauert was within his rights to use reasonable force to

eject them from his land.  Therefore, this incident served a legitimate purpose and cannot form the basis of an order of full protection.

**R.J.D. failed to establish he subjectively feared the danger of physical harm during several incidents.**

In *Schwalm v. Schwalm*, 217 S.W.3d 335, 337 (Mo. App. E.D. 2007), the court held that "a plaintiff is required to do more than simply assert a bare answer of 'yes' when asked if [he or she] was alarmed."  A husband and wife were litigating a dissolution of marriage action.  *Id*. at 336.  Husband had filed a petition for an order of protection against Wife, which alleged that Wife had knocked on his door, followed him in her car, and "hung around" his work.  *Id*.  Wife peaceably left when Husband refused to answer the door, and she moved her car when asked by Husband.  *Id*. at 337.  Wife had never threatened Husband.  *Id*.  Husband did not provide any proof of the fear of physical harm and "failed to testify that he was afraid of Wife and, specifically, afraid of physical harm." *Id*. at 337.

Furthermore, in *C.L. v. Hartl*, 495 S.W.3d 241, 244 (Mo. App. W.D. 2016), we held that when C.L. testified she "felt safe" during one encounter with her stalker, her actions demonstrated she subjectively feared physical danger.  Her stalker knocked on her door for thirty minutes while talking loudly to her through her door, called her twice leaving voicemails, and parked his car blocking her driveway preventing C.L. from leaving in her car.  *Id*. at 242.  During this incident, C.L. had set her alarm and brought her dog next to her.  *Id*. at 244.  We concluded these precautionary measures were

9

sufficient to prove by a preponderance of the evidence that C.L. feared physical danger in that instance.

Just as in *Schwalm*, R.J.D. did not testify that he feared a danger of physical harm during the incident where Gauert drove over his trash can, and the incident occurred in front of a sheriff's deputy. Furthermore, Gauert was driving away from R.J.D. as he was leaving R.J.D.'s and L.D.'s farm when he ran over the trash can. Additionally, unlike in *C.L.*, R.J.D. did not take any measures that would demonstrate he feared physical harm. He merely asked that Deputy Lebel arrest Gauert for property damage. There is no evidence to indicate R.J.D. feared a danger of physical harm in that particular instance.

Another incident occurred while R.J.D. and L.D. were working near the fence line; R.J.D. believed Gauert was goading him to come onto Gauert's property so that Gauert could hurt R.J.D., shoot R.J.D., or have R.J.D. arrested. Gauert called R.J.D. a "queer" and a "pussy," and Gauert made comments that L.D. had had sex with numerous men. R.J.D.'s testimony was:

> Toward the end, he goes you're a coward, you need to defend yourself and defend your wife. That's the only reason he could be out there saying that kind of stuff is to try to get me to go over to his property.

In other words, R.J.D. subjectively felt safe as long as he remained on his own property and only felt he would be harmed if he took the affirmative action of crossing onto Gauert's property. Furthermore, repeated incidents of verbal harassment are insufficient to demonstrate that an individual feared the danger of physical harm. *See C.H.*, 302 S.W.3d at 706-07. Therefore, R.J.D. failed to establish with substantial evidence that he

feared a danger of physical harm in that instance, and even if he had, that fear was reasonable.

**Because R.J.D. initiated the incident at the mailbox, the contact was not unwanted.**

In *Fowler v. Minehart*, 412 S.W.3d 917, 918 (Mo. App. S.D. 2013), Fowler petitioned for a full order of protection against Minehart. Fowler worked with Minehart's wife at a school, and Fowler made a disciplinary complaint against Minehart's wife. *Id.* Minehart made a threatening phone call to Fowler stating, "I'm going to come get you. I'm going to get even with you. I'll catch you off school campus and I'll take care of you." *Id.* at 919. Later that same day, Fowler requested to speak to Minehart and the two had a "'heated conversation,' during which Minehart said, '[y]ou wait till you leave the school property' and pointed his finger at Fowler." *Id.* The Court held that because Fowler wanted to speak with Minehart during the second conversation, that conversation could not qualify as an "unwanted communication" or "unwanted contact" as required by the Act. *Id.* at 922.

In the instant case, Gauert had approached L.D., while she was retrieving her mail and called L.D. derogatory names. R.J.D. arrived in the middle of the conversation and testified that:

> Well, I walked right up to his [car] door. He had the window down. I told him not to talk to my wife that way. He opened the door, stood up and confronted me. And [L.D.] seen [sic] what was happening, and she pulled my arm away from him.

11

Just as in *Fowler*, R.J.D. approached Gauert and initiated the physical confrontation. While the communication between Gauert and L.D. was certainly unwanted and offensive, R.J.D. initiated the portion of the interaction that occurred between himself and Gauert. Therefore, the incident cannot qualify as an "unwanted communication" or "unwanted contact" as between R.J.D. and Gauert.

**The remaining incident is insufficient to warrant the entry of a full order of protection.**

Only one incident remains that could be used to establish a reasonable and subjective fear of Gauert's actions, the shooting of G.G.'s dog, but one incident alone cannot form the basis of an order of protection under the stalking provisions under the Act. *Id*. at 922.

### Conclusion

The Judgment is reversed and vacated in its entirety.[7]

_____
Gary D. Witt, Judge

All concur

---

[7] The fact that the law requires reversal in this case should not be read to indicate we condone Gauert's reprehensible behavior.

12